[No. S127921. June 8, 2006.]

HELGA CARTER, Plaintiff and Respondent, v.
CALIFORNIA DEPARTMENT OF VETERANS AFFAIRS, Defendant and
Appellant.

916

**COUNSEL**

Joseph Maguire, John H. McCardle, Patricia M. Keegan and Robert Wilson for Defendant and Appellant.

Graves & King, Patrick L. Graves, Harvey W. Wimer III and Dennis J. Mahoney for Diversified Paratransit, Inc., and California Manufacturers and Technology Association as Amici Curiae on behalf of Defendant and Appellant.

Jones Day, Elwood Lui, Scott D. Bertzyk and Eugenia Castruccio Salamon for Los Angeles Unified School District as Amicus Curiae on behalf of Defendant and Appellant.

Terry K. Davis for Plaintiff and Respondent.

Law Office of David J. Duchow and David J. Duchow for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Respondent.

Orren & Orren and Tyna Thall Orren for Janis Adams as Amicus Curiae on behalf of Plaintiff and Respondent.

Dave Jones and Joseph Dunn as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

CHIN, J.—In 2003, the Legislature amended the Fair Employment and Housing Act (Gov. Code, § 12900 et seq. (FEHA))[1] to state that employers are potentially liable when third party nonemployees (e.g., the employer's customers or clients) sexually harass their employees. (Stats. 2003, ch. 671, § 2, amending § 12940, subd. (j)(1).) Prior to the amendment, section 12940, subdivision (j)(1), seemed to apply to employers and employees only. In amending the statute to expressly refer to harassment by nonemployees, the Legislature stated its intent "to construe and clarify the meaning and effect of existing law." (Stats. 2003, ch. 671, § 2.) The question we address is whether the 2003 amendment may be properly applied to the present action, which was initially before this court when the Legislature amended the statute. We conclude the amendment merely clarified existing law and therefore does apply to this case. We therefore reverse the Court of Appeal's judgment on remand to the contrary.

## I. FACTS AND PROCEDURAL HISTORY

We summarize the relevant facts and procedural history as presented by the Court of Appeal and the record below.

Plaintiff Helga Carter worked as a nurse at defendant California Department of Veterans Affairs (VA). Residents were usually veterans over age 62 or suffering from a disability that prevented them from earning an independent living. In 1996, plaintiff provided nursing care for a tenant resident, Elber Scott Brown, who was recovering from penile implant surgery. Plaintiff befriended Brown, took quilting lessons from him, and invited him to spend Thanksgiving with her family as part of the VA's "Adopt a Resident for the

---

[1] Unless otherwise stated, all further statutory references are to the Government Code.

Holidays" program. Initially, Brown made suggestive remarks to plaintiff including, "You've really got nice breasts" and "You've got a great ass." Plaintiff regarded these remarks as inappropriate but harmless. She hoped that after Brown visited her home he would realize she had a husband and family and that he would stop the conduct.

Brown's behavior toward plaintiff worsened sometime after the holidays. Brown told plaintiff that he wanted to sleep with her and threatened to ruin her reputation by telling others that he had slept with her. Plaintiff repeatedly refused Brown's overtures, and later overheard him telling people in the clinic that he had sexual encounters with her at a local Motel 6. Plaintiff asked Brown to stop making the false accusations, and complained about Brown's behavior to her supervisor. But Brown continued to harass her.

The VA administrator, Thomas Langley, acknowledged that VA residents were subject to a code of conduct that prohibited them from engaging in sexual harassment. Among other sanctions, the VA could evict residents for misconduct. After plaintiff complained to her supervisor about Brown's behavior, he advised plaintiff to have no contact with Brown. The supervisor also provided counseling for Brown and issued plaintiff a walkie-talkie that she could use to call security if Brown's harassing behavior continued, which it did. Brown even tried to ram plaintiff with his electric scooter in the VA facility. After the VA failed to take effective steps to end the harassment, plaintiff went on administrative stress leave. She took prescribed antidepressants and sleeping medication to relieve her stress during this time. After her second leave, she did not return to work because "nothing had changed" and she was afraid to return.

While plaintiff was on leave, she filed a complaint with the Department of Fair Employment and Housing (DFEH). The DFEH issued plaintiff a right-to-sue letter. Plaintiff did not act after her superiors told her that a state employee could not sue a state agency. Plaintiff's superiors also told her that if she filed a complaint she would be fired. Plaintiff later discovered that she could file a complaint against the state, and sued for sexual harassment. The trial court entered judgment in plaintiff's favor and the VA appealed.

The Court of Appeal reversed the judgment after concluding that the FEHA did not impose liability on an employer when its customers or clients sexually harassed its employees. We granted plaintiff's petition for review, and held the matter for a case pending before us that addressed the same issue: *Salazar v. Diversified Paratransit, Inc.* (Cal.App.) review granted January 22, 2003, S111876 (*Salazar I*). In *Salazar I*, a bus passenger sexually harassed the female bus driver, and the appellate court held that the FEHA did not impose liability on the employer for the passenger's conduct. In response to

the Court of Appeal decision in *Salazar I*, the Legislature introduced Assembly Bill No. 76 (2003–2004 Reg. Sess.). The bill amended the FEHA to add language specifying that employers are "responsible for the acts of nonemployees, with respect to the sexual harassment of employees . . . where the employer . . . knows or should have known of the conduct and fails to take immediate and appropriate corrective action." (§ 12940, subd. (j)(1), as amended by Stats. 2003, ch. 671, § 1, underscoring omitted.) The bill's stated intent was "to construe and clarify the meaning and effect of existing law" and to reject *Salazar I*'s interpretation of the FEHA. (Stats. 2003, ch. 671, § 2.)

We dismissed the review of both the present case and *Salazar I* and remanded them to the Courts of Appeal for reconsideration in light of the amendment to section 12940, subdivision (j)(1). The Court of Appeal reconsidering *Salazar I* found the 2003 amendment to section 12940, subdivision (j)(1) to be a clarification of existing law and remanded the action to the trial court for further proceedings. (*Salazar v. Diversified Paratransit, Inc.* (2004) 117 Cal.App.4th 318 [11 Cal.Rptr.3d 630] (*Salazar II*).)[2] As noted, in the present action the Court of Appeal disagreed with *Salazar II*, concluding that the amendment was neither expressly retroactive nor, despite the Legislature's declaration to the contrary, merely declaratory of existing law. The court further concluded that, although the Legislature expressed its intent to apply the amendment retroactively, it would be a violation of due process to do so.[3] We granted plaintiff's petition for review in order to resolve the conflict with *Salazar II*.

## II.   DISCUSSION

### A.  *Background*

As amended in 1984, the predecessor to section 12940, former subdivision (j)(1), made it unlawful "[f]or an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, *or any other person,* because of race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, sex, or age, to harass an employee or an applicant. Harassment of an employee or an applicant by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate

---

[2] We denied review of *Salazar II* as untimely on May 24, 2004.

[3] The Court of Appeal found the issue of employer liability for third party harassment under FEHA dispositive and reversed judgment on that ground. The court did not address the remaining issues, including immunity questions, sufficiency of the evidence, defenses, apportionment, or attorney fees. We therefore limit our review to the FEHA amendment issue.

correction action. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment." (§ 12940, former subd. (i), as amended by Stats. 1984, ch. 1754, § 2, pp. 6405–6406, italics added.)

As amended in 1984, the uncodified preamble in section 1 of the statute expressly stated that "[i]t is the existing policy of the State of California, as declared by the Legislature, that procedures be established by which allegations of prohibited harassment and discrimination may be filed, timely and efficiently investigated, and fairly adjudicated, and that agencies and employers be required to establish affirmative programs which include prompt and remedial internal procedures and monitoring so that worksites will be maintained free from prohibited harassment and discrimination by their agents, administrators, and supervisors as well as by their nonsupervisors *and clientele*. To further this intent, the Legislature enacts this act." (Stats. 1984, ch. 1754, § 1, pp. 6403–6404, italics added; hereafter section 1.)

The Legislature amended section 12940 several times (in 1999 it changed subdivision (i) to subdivision (h)(1), although the language in the statute remained identical to the 1984 version). In 2000, the Legislature redesignated subdivision (h)(1) as (j)(1) (Stats. 2000, ch. 1049, § 7), again keeping the language substantially similar. In 2003, the Legislature amended section 12940, subdivision (j)(1), in order to insert the following relevant language between the statute's second and third sentences: "An employer may also be responsible for the acts of nonemployees, with respect to sexual harassment of employees . . . in the workplace, where the employer, or its agents or supervisors, knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing cases involving the acts of nonemployees, the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of those nonemployees shall be considered." (§ 12940, subd. (j)(1), as amended by Stats. 2003, ch. 671, § 1.) In enacting the amendment, the Legislature declared in uncodified section 2: "It is the intent of the Legislature in enacting this act to construe and clarify the meaning and effect of existing law and to reject the interpretation given to the law in Salazar v. Diversified Paratransit, Inc. (2003) [*Salazar I*] 103 Cal.App.4th 131 [126 Cal.Rptr.2d 475]." (Stats. 2003, ch. 671, § 2.)

## B. *Effect of a Statutory Amendment*

■   The sole issue we address is whether the 2003 amendment to section 12940, subdivision (j)(1), which expressly imposes liability on employers when nonemployees sexually harass employees, may be applied to conduct preceding its enactment. In deciding the amendment's application, we must explore whether the amendment changed or merely clarified existing law. A statute that merely clarifies, rather than changes, existing law is properly applied to transactions predating its enactment. (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507] (*Western Security Bank*).) However, a statute might not apply retroactively when it substantially changes the legal consequences of past actions, or upsets expectations based in prior law. (*Ibid.*; see also *Landgraf v. USI Film Products* (1994) 511 U.S. 244, 269 [128 L.Ed.2d 229, 114 S.Ct. 1483] (*Landgraf*).)

■   "[T]he interpretation of a statute is an exercise of the judicial power the Constitution assigns to the courts." (*Western Security Bank, supra,* 15 Cal.4th at p. 244.) When this court "finally and definitively" interprets a statute, the Legislature does not have the power to then state that a later amendment merely declared existing law. (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 473 [20 Cal.Rptr.3d 428, 99 P.3d 1015] (*McClung*).)

However, "if the courts have not yet finally and conclusively interpreted a statute and are in the process of doing so, a declaration of a later Legislature as to what an earlier Legislature intended is entitled to consideration. [Citation.] But even then, 'a legislative declaration of an existing statute's meaning' is but a factor for a court to consider and 'is neither binding nor conclusive in construing the statute.' [Citations.]" (*McClung, supra,* 34 Cal.4th at p. 473 and cases cited.) Because this court has not yet finally and definitively interpreted section 12940, subdivision (j)(1), with respect to employer liability for sexual harassment of employees committed by nonemployees, we give the Legislature's views "due consideration." (*Western Security Bank, supra,* 15 Cal.4th at p. 244.)

■   A legislative declaration that an amendment merely clarified existing law "cannot be given an obviously absurd effect, and the court cannot accept the Legislative statement that an unmistakable change in the statute is nothing

more than a clarification and restatement of its original terms." (*California Emp. etc. Com. v. Payne* (1947) 31 Cal.2d 210, 214 [187 P.2d 702].) Material changes in language, however, may simply indicate an effort to clarify the statute's true meaning. (*Western Security Bank, supra,* 15 Cal.4th at p. 243.) "One such circumstance is when the Legislature promptly reacts to the emergence of a novel question of statutory interpretation[.]" (*Ibid.*) " ' "An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute. . . . [¶] If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change." [Citation.]' " (*Ibid.*)

■ In this case, the Legislature introduced the 2003 amendment less than two months after the *Salazar I* decision. ■ In addition, the Legislature stated in uncodified section 2 of Statutes 2003, chapter 671, that the amendment clarified existing law and should be given immediate effect to cases involving conduct preceding its enactment. (See *McClung, supra,* 34 Cal.4th at p. 476 [finding an inference that the Legislature intended an amendment to apply retroactively far weaker than if the Legislature had asserted that the amendment's provisions declared existing law].) "[A] subsequent expression of the Legislature as to the intent of the prior statute, although not binding on the court, may properly be used in determining the effect of a prior act." (*California Emp. etc. Com. v. Payne, supra,* 31 Cal.2d at pp. 213–214.)

If we conclude the amendment did more than clarify existing law, we would then address whether the amendment should apply retroactively to the conduct present here, and whether a retroactive application would implicate due process concerns. (*Landgraf, supra,* 511 U.S. at p. 270.) If, however, the amendment merely clarified existing law, then employers were potentially liable for sexual harassment of employees by nonemployees at the time of the conduct we address, and the amendment would not change the statute's substantive legal effect or require us to address the validity of the statute's application. (See *McClung, supra,* 34 Cal.4th at p. 471.)

C.  *2003 Amendment to Section 12940, Former Subdivision (j)(1)*

The VA asserts, and the Court of Appeal agreed, that the 2003 amendment changed section 12940, subdivision (j)(1) in several ways. According to the

VA, the 2003 amendment imposes liability on employers specifically and does not address the other entities (labor organization, employment agency, or any other person, for example) listed in section 12940, subdivision (j)(1). The VA also contends the amendment limits employer liability for nonemployee conduct to sexual harassment, and does not include the other forms of harassment listed in the former statute. In addition, the VA contends the amendment now provides a standard for reviewing the acts of nonemployees because "the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of those nonemployees" is now considered. (§ 12940, subd. (j)(1), as amended by Stats. 2003, ch. 671, § 1.)

The Court of Appeal concluded that because the 2003 amendment limits liability to instances of sexual harassment that clients commit, the limitation defeats plaintiff's claim that section 12940, subdivision (j)(1), always imposed such a liability. The Court of Appeal acknowledged the contradictory language in uncodified section 1 of the 1984 amendment (Stats. 1984, ch. 1754, § 1, pp. 6403–6404) and in section 12940, former subdivision (j)(1), but did not believe the language supported plaintiff's statutory interpretation.

In order to determine whether the 2003 amendment clarified existing law or substantially changed it, we must determine whether section 12940, former subdivision (j)(1), could not have been properly construed to impose liability on employers for sexual harassment of employees by nonemployees. We therefore examine the former provision to determine its meaning and intended effect.

### 1. The Language of Section 12940, Former Subdivision (j)(1)

The VA interprets section 12940, former subdivision (j)(1), prior to the 2003 amendment, as requiring each entity to take all reasonable steps to prevent harassment of employees from occurring and to take immediate and appropriate action when the entity is or should be aware of the conduct, only if an employee caused the harassment. To reach this interpretation, the VA reads the first sentence of former subdivision (j)(1) as establishing separate liability for each listed entity, which would include "any other person." (Stats. 2000, ch. 1049, § 7; see ante, pp. 920–921.) In other words, according to the VA, each entity, including a "person," would be liable for the unlawful employment practice described in the second sentence: the "harassment of an employee [or] applicant . . . by an employee other than an agent or supervisor" when the entity "knows or should have known of this conduct and fails to take immediate and appropriate corrective action." (Ibid.) The third sentence, requiring each entity to "take all reasonable steps to prevent harassment from occurring," would then apply when the entity could otherwise be liable for harassment based on the second sentence only. (Ibid.) According

to the VA, this reading implies that section 12940, former subdivision (j)(1), never imposed liability on employers for third party harassment.

■ The VA's statutory interpretation, however, does not consider the effect of the uncodified section 1. As noted *ante,* at page 921, in 1984 the Legislature declared in section 1 that it is the existing policy of the state to establish procedures for employees to fairly adjudicate allegations of harassment by "agents," "supervisors," "nonsupervisors," and *"clientele."* (Stats. 1984, ch. 1754, § 1, pp. 6403–6404, italics added.) ■ An uncodified section is part of the statutory law. (See *County of Los Angeles v. Payne* (1937) 8 Cal.2d 563, 574 [66 P.2d 658] ["The codes of this state . . . have no higher standing or sanctity than any other statute regularly passed by the [L]egislature"].) "In considering the purpose of legislation, statements of the intent of the enacting body contained in a preamble, while not conclusive, are entitled to consideration. [Citations.] Although such statements in an uncodified section do not confer power, determine rights, or enlarge the scope of a measure, they properly may be utilized as an aid in construing a statute. [Citations.]" (*People v. Canty* (2004) 32 Cal.4th 1266, 1280 [14 Cal.Rptr.3d 1, 90 P.3d 1168].) The Legislature's clear reference to "clientele" shows an intent to include nonemployees within the former statute's ambit.

In addition, section 1's inclusion of the employer's "clientele" as persons who could create employer liability for sexual harassment is consistent with section 12940 subdivision (j)(1)'s first sentence, which prohibits an employer or "any other person" from harassing an employee. (Cf. Stats. 1984, ch. 1754, § 2, pp. 6405–6406; Stats. 2000, ch. 1049, § 7.) Plaintiff points out that section 12940, subdivisions (j)(1) and (k),[4] have always required an entity to "take all reasonable steps to prevent harassment from occurring," and have never placed limitations on the source of the harassment. Because section 1 clearly includes "clientele," plaintiff makes a strong argument that prior to its 2003 amendment, section 12940, subdivision (j)(1) covered situations that included employee harassment by clients or customers.

---

[4] Section 12940 subdivision (k) provides: "[It shall be an unlawful employment practice] [f]or an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." (§ 12940, subd. (k).) The VA also argues that section 12940, subdivision (k), does not support an independent cause of action. We have said in *State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1040 [6 Cal.Rptr.3d 441, 79 P.3d 556], that section 12940, subdivision (k), describes a separate unlawful employment practice. But courts have required a finding of actual discrimination or harassment under FEHA before a plaintiff may prevail under section 12940, subdivision (k). (See, e.g., *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 283–84 [73 Cal.Rptr.2d 596].) We do not express a view on whether subdivision (k) must be read in pari materia with subdivision (j)(1).

The VA criticizes plaintiff's reliance on section 1 in two ways. First, the VA contends that " 'legislative intent is not gleaned solely from the preamble . . . ; it is gleaned from the statute as a whole, which includes the particular directives.' " (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1118 [81 Cal.Rptr.2d 471, 969 P.2d 564].) We note that unlike the broad term "significance" in the provision at issue in *Briggs*, however, the term "clientele" in section 1 specifically refers to nonemployees, and may be used to resolve ambiguity found in the statute's text. (See *Barker v. Brown & Williamson Tobacco Corp.* (2001) 88 Cal.App.4th 42, 49 [105 Cal.Rptr.2d 531] ["even if we were to find an ambiguity in the language . . . the legislative intent is made absolutely plain by its declaration of intent"].)

The VA also contends that even if uncodified section 1 establishes a public policy against sexual harassment by "clientele," FEHA does not provide a remedy for a violation of that policy. The VA cites *Jennings v. Marralle* (1994) 8 Cal.4th 121 [32 Cal.Rptr.2d 275, 876 P.2d 1074] for support, but the case is inapposite. In *Jennings*, it was clear that the plaintiff, whose employer employed fewer than five employees, did not have a cause of action for age discrimination under FEHA, because employer liability under FEHA is restricted to employers of five or more persons. (*Jennings v. Marralle, supra,* 8 Cal.4th at p. 134.) The court instead faced the question whether the plaintiff had an alternative cause of action against the employer in violation of the public policy established in sections 12920 and 12921. (*Jennings v. Marralle,* at p. 134 et seq.) The court determined that the plaintiff could not sue because FEHA's public policy against age discrimination also did not extend to small employers. (*Jennings, supra,* 8 Cal.4th at p. 130; see also *Reno v. Baird* (1998) 18 Cal.4th 640, 664 [76 Cal.Rptr.2d 499, 957 P.2d 1333] ["Because plaintiff may not sue [defendant] as an individual supervisor under the FEHA, she may not sue her individually for wrongful discharge in violation of public policy"].)

It is clear that prior to its 2003 amendment, section 12940, former subdivision (j)(1), included employers and sexual harassment as covered entities and forms of harassment, respectively. The statute also refers to "any other person" as a potential liability source for the employer. In addition, as we noted, section 1 of the 1984 amendment of the legislation indicates that under the pre-2003 version, an employer may be liable for unlawful conduct committed by "clientele." But whether the pre-2003 version of the statute included nonemployees is somewhat ambiguous, and both plaintiff and the VA have made credible arguments in favor of their positions. Therefore, based on the language of the statute, we could reasonably interpret section 12940, former subdivision (j)(1), either way, and must assume that the former statute was ambiguously worded.

## 2. *Legislative Intent*

■ Assuming that section 12940, former subdivision (j)(1), is susceptible of two conflicting interpretations, we turn to legislative history for guidance. (See, e.g., *Dominguez v. Superior Court* (1990) 226 Cal.App.3d 524, 532 [276 Cal.Rptr. 564] [examining legislative history after finding conflict in language with uncodified portion of statute and codified sections susceptible of more than one construction].) In 1982, the Legislature introduced FEHA's anti-harassment provisions, borrowing language from the Equal Employment Opportunity Commission (EEOC) regulations, contained in 29 Code of Federal Regulations part 1604.11.[5] (See, e.g., Sen. Com. on Industrial Relations, analysis of Assem. Bill No. 1985 (1981–1982 Reg. Sess.) Jan. 7, 1982, p. 2.) The VA notes, however, that federal regulatory language related to employer liability for sexual harassment committed by nonemployees in part 1064.11(e), was not adopted by California until the enactment of the 2003 amendment to section 12940, subdivision (j)(1), implying that the Legislature had deliberately declined to impose liability on employers in 1982 and for many years thereafter, and that the 2003 amendment essentially changed existing law.[6] However, as we have often explained, "Unpassed bills, as evidences of legislative intent, have little value. [Citations.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1396 [241 Cal.Rptr. 67, 743 P.2d 1323]; see also *Mejia v. Reed* (2003) 31 Cal.4th 657, 668 [3 Cal.Rptr.3d 390, 74 P.3d 166] [declining to draw conclusions about Legislature's intent based on legislative silence].) Here, it is especially difficult to rely on a failure to act when the issue of third party harassment does not appear in the 1982 legislative materials. We also cannot ascertain legislative intent from the failure of subsequent Legislatures to act on adopting the language at issue.

■ The VA relies on drafts of the 1984 amendment to former subdivision (i) of section 12940 (now subd. (j)(1)) to support its contention that the Legislature declined to expand employer liability.[7] Successive drafts of a pending bill may be helpful to interpret a statute if its meaning is unclear. (*State Farm Mut. Auto Ins. Co. v. Haight* (1988) 205 Cal.App.3d 223, 236

---

[5] In 1982, the provision now designated subdivision (j)(1) of section 12940 was introduced as subdivision (i). (Stats. 1982, ch. 1193, § 2, p. 4260.)

[6] 29 Code of Federal Regulations part 1604.11(e) provides: "An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action. In reviewing these cases the Commission will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees." (2005.)

[7] As indicated, current section 12940, subdivision (j)(1), was not so designated until 2000. (See p. 921, *ante.*)

[252 Cal.Rptr. 162].) The first draft of the amendment proposed: "Harassment of an employee or applicant by an employee any person other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action." (Sen. Bill No. 2012 (1983–1984 Reg. Sess.) as introduced Feb. 16, 1984, pp. 6–7.) In a subsequent draft, the Legislature rejected substitution of "any person" for "an employee" and restored the original language. (Sen. Bill No. 2012 (1983–1984 Reg. Sess.) as amended Apr. 16, 1984, p. 6.) The VA asserts, and the Court of Appeal concluded, that the rejection of the "any person" language demonstrates legislative intent not to impose liability on employers for third party harassment. (See *Central Delta Water Agency v. State Water Resources Control Bd.* (1993) 17 Cal.App.4th 621, 634 [21 Cal.Rptr.2d 453] [finding Legislature's deletion of language that appeared in statute's earlier version is strong evidence that final statute as enacted should not be construed to include omitted provision].)

Based on the same reasoning we applied to the Legislature's failure to adopt part 1604.11(e) of the EEOC regulations (29 C.F.R.), we disagree with the Court of Appeal and the VA. (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 28–29 [56 Cal.Rptr.2d 706, 923 P.2d 1] [rejecting distinction between failure to enact new statute and failure to amend existing statute and finding both situations of little value as evidence of legislative intent].) It is particularly problematic to make inferences here, where the rejected federal provision and the enacted uncodified section 1 manifest conflicting legislative intents and the issue of third party harassment, including the practical difficulties that may arise from imposing liability on employers, was not extensively discussed in the legislative materials. (See, e.g., *Lolley v. Campbell* (2002) 28 Cal.4th 367, 378 [121 Cal.Rptr.2d 571, 48 P.3d 1128] [rejecting argument that deleted language was intended to change the law because it might equally have been intended to clarify existing law]; *Arnett v. Dal Cielo, supra,* 14 Cal.4th at p. 28 [finding that Legislature might have believed the proposed provision unnecessary because law already so provided].)

The VA attempts to bolster its contention through documents written by Senator Diane Watson, author of Senate Bill No. 2012 (1983–1984 Reg. Sess.). On June 14, 1984, which postdates the deletion of the former statute's "any person" language, Senator Watson prepared a memorandum and entitled it "Fact Sheet on SB 2012 On Third Reading File" for distribution to all Senate members. The memorandum states: *"The bill does not hold an employer responsible for outside harassment. This was amended out of the bill* in the Senate Industrial Relations Committee." Where an author's statements appear to be part of the debate on the legislation and were communicated to other legislators, we can regard them as evidence of legislative intent. (See *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1157, fn. 6 [278 Cal.Rptr. 614, 805 P.2d 873].)

As plaintiff observes, however, the term "outside harassment" was never defined for the legislators who received the memorandum. That is, the legislators may have understood the phrase "outside harassment" to mean harassment that takes place outside the workplace. In any event, the third party harassment issue received no further elaboration elsewhere in the legislative materials and was generally paid little attention.

■ Senator Watson appears to have thought that provision did not include customer harassment. On June 22, 1984, she wrote to the California Manufacturers Association, stating in relevant part: "Your letter expresses concern over employer's responsibility for customer harassment. This provision has been amended out of the bill." We find this letter less persuasive because it reflects one legislator's personal opinion of the provision at issue. In general, a legislator's personal understanding of a bill does not indicate the Legislature's collective intent in enacting that bill. (See, e.g., *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589–590 [128 Cal.Rptr. 427, 546 P.2d 1371].)

Though the VA's arguments are not without merit, we find reliance on changes in successive drafts and statements from the author not particularly useful here in clarifying any perceived statutory ambiguity. The fact that the same proposed substitution of "any person" for "an employee" was also rejected in a draft of the 2003 amendment supports our decision not to rely on the deleted language as an indicator of legislative intent. (Assem. Bill No. 76 (2003–2004 Reg. Sess.) as amended June 19, 2003.)

■ We have already mentioned that under certain circumstances, the Legislature may make material changes in language in an effort to clarify existing law. (*Western Security Bank, supra*, 15 Cal.4th 243 [finding a clarification of existing law despite the addition of two sections by amendment]; see also *In re Angelique C.* (2003) 113 Cal.App.4th 509 [6 Cal.Rptr.3d 395] [addressing Legislature's action to clarify law in response to *Renee J. v. Superior Court* (2001) 26 Cal.4th 735 [110 Cal.Rptr.2d 828, 28 P.3d 876]]; *Plotkin v. Sajahtera, Inc.* (2003) 106 Cal.App.4th 953 [131 Cal.Rptr.2d 303] [concluding that substantial narrowing of the definition of "vehicle parking facility" did not preclude finding that amendment clarified existing law].) In addition, we recognize that "the Legislature may choose to state all applicable legal principles in a statute rather than leave some to even a predictable judicial decision. Express statutory language defining the scope of employer liability is not surplusage. Rather, it may eliminate potential confusion and avoid the need to research extraneous legal sources to understand the statute's full meaning. Legislatures are free to state legal principles in statutes, even if they repeat preexisting law, without fear the courts will find them unnecessary and, for that reason, imbued with broader meaning." (*Reno v. Baird, supra*, 18 Cal.4th at p. 658.)

In this case, in 2003 the Legislature very clearly expressed its intent to clarify section 12940, subdivision (j)(1). The amendment was made promptly in response to the Courts of Appeal opinions in *Salazar I* and the present case, in order to clarify the ambiguities that caused confusion in the appellate courts and among litigants. Any ambiguity that existed in the language and legislative history of section 12940, former subdivision (j)(1), when combined with the Legislature's prompt and clear response to an appellate court's contrary interpretation of the statute and the Legislature's statement in uncodified section 2 of the 2003 statute that the 2003 amendment was intended to clarify existing law, leads us to conclude that the Legislature merely clarified existing law when it amended section 12940, former subdivision (j)(1), to refer specifically to acts of nonemployees.

In light of our conclusion, therefore, we do not address retroactivity and related due process concerns. "Such a legislative act has no retrospective effect because the true meaning of the statute remains the same." (*Western Security Bank, supra,* 15 Cal.4th at p. 243; see also *In re Marriage of McClellan* (2005) 130 Cal.App.4th 247, 259 [30 Cal.Rptr.3d 5].)[8]

### D. *Additional Proceedings*

Plaintiff asserts that application of amended section 12940, subdivision (j)(1), to this case would not require a remand for retrial. She recognizes that the added language requires us to consider "the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of . . . nonemployees." But plaintiff contends that these elements are not new and have always been covered by the statute's command for employers to "take all reasonable steps to prevent harassment from occurring." That may be true, but the broad rubric of reasonableness might not have afforded either the VA or the jury the opportunity to focus on the explicit elements articulated in amended subdivision (j)(1). We therefore

---

[8] Although plaintiff points out that federal law supports our conclusion, we base our decision on California law only. Contrary to plaintiff's contention, federal cases finding employers liable for sexual harassment by nonemployees do not control our conclusion. We have stated that "[o]nly when FEHA provisions are similar to those in Title VII do we look to the federal courts' interpretation of Title VII as an aid in construing the FEHA." (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 74 [99 Cal.Rptr.2d 316, 5 P.3d 874].) Although title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) does not contain FEHA's sexual harassment provisions, federal decisions serve to bolster our conclusion that the Legislature was guided by established policy when clarifying existing law, because title VII and FEHA generally share a similar intent and purpose. (See, e.g., *Reno v. Baird, supra,* 18 Cal.4th at p. 659; see also *Lockard v. Pizza Hut, Inc.* (10th Cir. 1998) 162 F.3d 1062, 1073–1074 [employer who condoned or tolerated creation of hostile work environment by customers held liable based on employer's control of the work conditions]; see also *Folkerson v. Circus Circus Enterprises, Inc.* (9th Cir. 1997) 107 F.3d 754, 756 [employer liable for casino patron sexual harassment of employee].)

conclude we should remand the matter to the Court of Appeal in order to allow the court to consider whether the trial court adequately addressed the material issues that are now expressly provided. "It is familiar appellate practice to remand causes for further proceedings without deciding the merits, where justice demands that course in order that some defect in the record may be supplied. Such a remand may be made to permit further evidence to be taken or additional findings to be made upon essential points." (*Ford Motor Co. v. Labor Board* (1939) 305 U.S. 364, 373 [83 L.Ed. 221, 59 S.Ct. 301]; see also Code Civ. Proc., § 906 [appellate court may order retrial or further proceedings if necessary and proper].)

## III.  CONCLUSION

We conclude that the 2003 amendment to section 12940, subdivision (j)(1), clarified existing law by providing explicit standards to govern employer liability for sexual harassment of employees that nonemployees commit. We therefore reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.