Filed 7/19/23

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| YISROEL GOLDSTEIN et al., | D081587 |
| Petitioners, | |
| v. | (San Diego County Super. Ct. No. 37-2020-00016638-CU-PO-CTL) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| SAN DIEGO GUNS, LLC, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Kenneth J. Medel, Judge. Petition granted.

Artiano Shinoff, Daniel R. Shinoff, Sheldon Ostroff, and Maurice A. Bumbu, for Petitioners.

No appearance for Respondent.

Law Offices of Adrienne D. Cohen, Adrienne D. Cohen and Sean R. Ferron, for Real Party in Interest.

In this litigation arising from the April 2019 shooting at the Chabad of Poway synagogue, the plaintiffs in two consolidated lawsuits against San Diego Guns, LLC (San Diego Guns) seek a peremptory writ of mandate directing the trial court to vacate its ruling that granted summary adjudication to San Diego Guns on plaintiffs' causes of action seeking to recover against San Diego Guns based on the doctrine of negligence per se. Plaintiffs' theory of negligence per se is that San Diego Guns violated California law in selling the 19-year-old shooter a rifle. According to plaintiffs, the shooter did not qualify for the then-existing exception that allowed a person under the age of 21 to be sold a rifle if that person possessed a "valid, unexpired hunting license." (Former Pen. Code, § 27510, subd. (b)(1).)[1]

The trial court granted summary adjudication based on its conclusion that the shooter's hunting license was valid and unexpired in April 2019 even though, on its face, the license stated that it was "Valid 07/01/2019 to 06/30/2020," i.e., for a period beginning more than two months *after* San Diego Guns sold him the rifle. The trial court distinguished between the time period "when the license is 'valid' or effective for purposes of hunting," which began on July 1, 2019, and the time period when "the license is valid for purposes of sale of the weapon," which, according to the trial court, began when the license *was issued* in April 2019.

As we will explain, the meaning of the statute's reference to a "valid, unexpired hunting license" is ambiguous. However, in light of the Legislature's subsequent enactment of section 16685, which clarifies that "a valid and unexpired 'hunting license' means a hunting license . . . for which

---

1      Unless otherwise indicated, all further statutory references are to the Penal Code.

the time period authorized for the taking of birds or mammals has commenced but not expired," the trial court erred in concluding that the shooter's hunting license was valid for the purpose of purchasing a firearm. We accordingly grant plaintiffs' petition for writ of mandate.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 27, 2019, 19-year-old John T. Earnest opened fire with an AR-15 style semiautomatic rifle at the Chabad of Poway synagogue, killing one person and wounding others. The rifle was sold to Earnest by San Diego Guns.

As relevant here, two groups of plaintiffs (Plaintiffs), who were present at the Chabad of Poway synagogue on the day of the shooting, filed lawsuits against San Diego Guns. Plaintiffs' two lawsuits were subsequently consolidated, along with two others.[2] Among the causes of action asserted by Plaintiffs against San Diego Guns were claims of negligence that depended on the doctrine of negligence per se.

To understand Plaintiffs' allegations of negligence per se, some background is required. Evidence Code section 669 "codifies the common law doctrine of negligence per se" and "allows proof of a statutory violation to create a presumption of negligence in specified circumstances." (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 927.) Under that provision, "The failure of a person to exercise due care is presumed if: [¶] (1) He violated a statute, ordinance, or regulation of a public entity; [¶] (2) The violation proximately caused death or injury to person or property; [¶] (3) The death or injury

[2]     The Plaintiffs who bring this petition for writ of mandate are the plaintiffs in *Goldstein v. Earnest et al.* (Super. Ct. San Diego County, 2020, No. 37-2020-00016638-CU-PO-CTL) and *Almog v. Earnest et al.* (Super. Ct. San Diego County, 2021, No. 37-2021-00022519-CU-PO-CTL).

resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and [¶] (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." (Evid. Code, § 669, subd. (a).) The presumption may be rebutted if the defendant shows that it "did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law." (*Id.*, subd. (b).) " '[T]he doctrine of negligence per se is not a separate cause of action, but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence.' " (*Turner v. Seterus, Inc.* (2018) 27 Cal.App.5th 516, 534.)

In April 2019, California law prohibited a licensed gun dealer, such as San Diego Guns, from selling, supplying, delivering, or giving possession or control of a firearm to any person under 21 years of age unless a specific statutory exception was applicable. (Former § 27510.) Although Earnest was 19 years old at the time, San Diego Guns sold the rifle to Earnest based on its belief that Earnest qualified for the exception set forth in former section 27510, subdivision (b)(1). Under that exception, San Diego Guns was permitted to sell, supply, deliver, or give possession or control "of a firearm that is not a handgun to a person 18 years of age or older who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife." (*Id.*, subd. (b)(1).) The AR-15 style rifle purchased by Earnest was indisputably "not a handgun," and thus Earnest was eligible to purchase it under the exception set forth in former section 27510, subdivision (b)(1) if he possessed a "valid, unexpired hunting license." (*Ibid.*)[3]

---

3      Section 27510 was amended as of January 1, 2020 to remove

4

Earnest paid for his rifle at San Diego Guns on April 13, 2019. He then obtained a hunting license on April 15, 2019, which he presented to San Diego Guns on April 16, 2019, when he completed the required paperwork for the transaction. The hunting license consisted of a single piece of paper, which stated that it was an "ANNUAL HUNTING LICENSE [¶] Valid 07/01/2019 to 06/30/2020." After a background check and the 10-day waiting period required by law, Earnest took possession of the rifle from San Diego Guns on April 26, 2019.

Plaintiffs alleged in their operative complaints that the doctrine of negligence per se applied because San Diego Guns violated former section 27510 when it sold the rifle to Earnest. Specifically, Plaintiffs alleged that the exception in former section 27510, subdivision (b)(1) allowing a person under 21 years of age to buy a rifle was not applicable because Earnest did not possess a "valid, unexpired hunting license" (former § 27510, subd. (b)(1)) at the time San Diego Guns sold him the rifle.

San Diego Guns filed a motion for summary judgment, or in the alternative, for summary adjudication against Plaintiffs. San Diego Guns

"semiautomatic centerfire rifle[s]" from the exception set forth in subdivision (b)(1) for a person under the age of 21 who possesses "a valid, unexpired hunting license." (Stats. 2019, ch. 737, § 3.) Thus, under current law, an AR-15 style semiautomatic centerfire rifle would no longer fall under the exception in subdivision (b)(1) for someone with "a valid, unexpired hunting license," but certain other types of firearms still qualify. Specifically, the current version of section 27510, subdivision (b)(1) states that the prohibition on selling, supplying, delivering, or giving possession or control of a firearm to any person under 21 years of age "does not apply to or affect the sale, supplying, delivery, or giving possession or control of a firearm that is not a handgun, semiautomatic centerfire rifle, completed frame or receiver, or firearm precursor part to a person 18 years of age or older who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife."

argued that Plaintiffs would not be able to successfully rely on the doctrine of negligence per se to show a breach of duty of care because the exception set forth in former section 27510, subdivision (b)(1) permitted San Diego Guns to sell the rifle to Earnest. According to San Diego Guns, the exception applied because Earnest had a validly issued and unexpired hunting license when he purchased the rifle in April 2019. In their opposition, Plaintiffs argued that (1) the hunting license was not valid and unexpired because it stated, on its face, that it did not become valid until July 1, 2019; and (2) even if the hunting license was "valid" within the meaning of former section 27510, subdivision (b)(1) when it was issued to Earnest on April 15, 2019, San Diego Guns sold the rifle to Earnest *before* that date because it accepted payment from Earnest for the rifle on April 13, 2019.

In a January 10, 2023 minute order, the trial court granted summary adjudication on what it identified as the "theory of 'negligence per se'" pled in Plaintiffs' complaints.[4] The trial court concluded that a hunting license "validly issued" is a "valid, unexpired hunting license" as that term is used in former section 27510, subdivision (b)(1). As the trial court explained, the face of the hunting license "states when the license is 'valid' or effective for purposes of hunting," but not "for purposes of sale of the weapon." The trial court ruled that San Diego Guns complied with section 27510 because Earnest's hunting license was validly issued and was not expired, even

---

[4] In the summary judgment/summary adjudication motion that it filed against Plaintiffs, San Diego Guns also challenged one of the other consolidated lawsuits, *Peretz v. San Diego Guns, LLC* (Super. Ct. of San Diego County, 2020, No. 37-2020-00047963-CU-PO-CTL), on the same basis. As to the *Peretz* plaintiff, the trial court granted *summary judgment* because negligence per se was the sole theory of liability alleged against San Diego Guns in the *Peretz* lawsuit. The plaintiff in the *Peretz* lawsuit filed a notice of appeal but is not participating in this writ proceeding.

though it could not yet be used for hunting.[5]  The trial court also rejected Plaintiffs' contention that the sale of the rifle took place when Earnest paid for the gun on April 13, 2019, prior to issuance of the hunting license on April 15, 2019.  Relying on the definitions of "sale" in the Commercial Code (Cal. U. Com. Code, § 2106, subd. (1)) and the Revenue and Taxation Code (Rev. & Tax. Code, § 6006, subd. (a)), the trial court ruled that "[t]he 'sale' here was not simply the acceptance of the money, but the transfer of the purchase," which occurred on April 26, 2019, after Earnest obtained the hunting license.

Plaintiffs filed a petition for a writ of mandate on February 14, 2023, requesting that we direct the trial court to vacate its summary adjudication ruling on the causes of action that depend on the doctrine of negligence per

---

[5]  In its minute order, the trial court sustained all of San Diego Guns' objections to the evidence submitted by Plaintiffs in support of their opposition.  Plaintiffs do not challenge that ruling, although they point out that the trial court failed to rule on their request that it take judicial notice of two statutes and one legislative history document, two of which were also the subject of San Diego Guns' evidentiary objections.  Regardless of the trial court's failure to rule, we take judicial notice, on our own motion, of the legislative history and statutory provisions that Plaintiffs submitted, to the extent they are relevant.  (Evid. Code, §§ 452, subds. (a), (c), 459.)  In the course of our analysis, we will discuss those and certain other legislative history materials that are relevant to our interpretation of former section 27510, subdivision (b)(1) but were not submitted by the parties.  We judicially notice those items on our own motion.  (See *Gananian v. Wagstaffe* (2011) 199 Cal.App.4th 1532, 1541, fn. 9 ["We may take judicial notice of legislative history materials on our own motion."].)  Plaintiffs also point out that although they filed objections to evidence submitted by San Diego Guns, the trial court did not rule on those objections.  "[I]f the trial court fails to rule expressly on specific evidentiary objections, it is presumed that the objections have been overruled, [and] the trial court considered the evidence in ruling on the merits of the summary judgment motion."  (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.)

se.  On March 16, 2023, we issued an order to show cause why the relief Plaintiffs seek should not be granted.

II.

DISCUSSION

A.    *Standard of Review*

"[A] ruling on a motion for summary adjudication is reviewed de novo." (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 273.)  Further, " '[t]he interpretation of a statute presents a question of law that this court reviews de novo.' "  (*Segal v. ASICS America Corp.* (2022) 12 Cal.5th 651, 662.)

B.    *Interpretation of Former Section 27510, Subdivision (b)(1)*

Our resolution of this writ proceeding turns on the meaning of the phrase "valid, unexpired hunting license" in former section 27510, subdivision (b)(1).  We must decide whether, for the purpose of the former statute, a hunting license is "valid" (1) only beginning on the date printed on the face of the license, showing the date that the license can first be used for hunting; or (2) as of the date that it is issued, even if it cannot yet be used for hunting.  Put another way, does the statutory use of the term "valid, unexpired hunting license" mean a license that *currently* allows the person holding it to engage in hunting, or does it mean a license that has been validly issued and is not yet expired?

"Our goal in construing a statute is 'to determine and give effect to the intent of the enacting legislative body.'  [Citation.]  ' "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent.  [Citation.]  The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context."  [Citation.]  If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls.'  [Citation.]  If,

8

however, the statute is susceptible to more than one interpretation, we 'may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute.' " (*Holland v. Assessment Appeals Bd. No. 1* (2014) 58 Cal.4th 482, 490 (*Holland*).)

Turning to the statutory language, the meaning of the phrase "valid, unexpired hunting license" is not clear. It is reasonable to understand the phrase to mean a license that is currently "valid" for hunting. But it is also reasonable to understand it as meaning a license that has been *validly issued* and has not yet expired. There are good arguments for either interpretation when only the words themselves are consulted. For one thing, if the Legislature meant to refer to a *validly issued* hunting license, why did it choose to use the word "valid" *and* the word "unexpired" to describe the hunting license, when the single word "unexpired" would just as well have described a hunting license that had been validly issued but had not yet expired? In that light, a "valid" license would tend to mean something *more* than merely an "unexpired" license, such as a license that is *currently valid for hunting*. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1010 ["interpretations that render statutory terms meaningless as surplusage are to be avoided"].) On the other hand, one of the common meanings of the word "valid" is "having legal efficacy or force." (Merriam-Webster's Online Dictionary (2023) <https://merriam-webster.com/dictionary/valid> [as of July 19, 2023], archived at <https://perma.cc/EWT3-7UJS>.) It is possible that the Legislature intended this definition of the word "valid," and that it accordingly wanted to specify that the hunting license had to be a document with legal efficacy in that it was *properly issued*.

9

Because the statutory language is ambiguous, we must consider other tools of interpretation. (*Holland*, *supra*, 58 Cal.4th at p. 490.) The parties have not supplied us with any of the legislative history materials from Senate Bill No. 1100, which enacted the former version of section 27510, subdivision (b)(1) that was operative in April 2019. (Stats. 2018, ch. 894, § 1.)[6] We have,

[6] San Diego Guns submitted the legislative history for a *different* statutory provision, which, like former section 27510, subdivision (b)(1), attaches legal significance to the fact that a person seeking to acquire a firearm possesses a hunting license. Specifically, under California law, a person who wants to obtain a firearm generally must have a firearm safety certificate. (§ 31615.) However, under section 31700, subdivision (c), "a valid hunting license that is unexpired" will be treated as a substitute, except as to handguns. San Diego Guns relies on legislative history indicating that this provision was enacted because a person who obtains a hunting license has passed an educational course with safety information that is "more extensive than that in the safety certificate education component." The legislative history of section 31700, subdivision (c) is inapposite here. It does not show the Legislature's purpose in requiring a "valid, unexpired hunting license" for the exception applicable to persons under the age of 21 in former section 27510, subdivision (b)(1). Nor does it shed any light on the meaning of the term "valid, unexpired hunting license" in that provision. At most, it shows that one reason the Legislature might include a hunting license exception when enacting legislation is because a person who has a hunting license has taken an educational course that includes firearm safety instruction.

Even were we to find the legislative history submitted by San Diego Guns to be applicable here, we note that some of the language that San Diego Guns identifies in the legislative history of section 31700, subdivision (c) is more consistent with Plaintiffs' contention that a "valid, unexpired hunting license" in former section 27510, subdivision (b)(1) means a license that is *currently* valid for engaging in hunting. Specifically, San Diego Guns quotes a legislative analyst as stating that, under section 31700, subdivision (c), persons "with valid *current-season* hunting licenses" would be exempted from the generally applicable safety certificate requirement. (Italics added.) (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 683 (2013-2014 Reg. Sess.) as amended Aug. 7, 2013, p. 1.) That would appear to describe a

10

on our own motion, consulted the available legislative reports and analyses from Senate Bill No. 1100, but none of them suggest a definition for the term "valid, unexpired hunting license." Nor does that legislative history specifically set forth the Legislature's purpose in creating the hunting license exception for persons under the age of 21 to purchase certain firearms.[7] The legislative history identifies some of the general policies behind Senate Bill No. 1100. However, when we attempt to apply those general policy goals we obtain no definitive answer as to whether San Diego Guns, on the one hand, or Plaintiffs, on the other, have the correct interpretation of the phrase "valid, unexpired hunting license" in former section 27510, subdivision (b)(1). For example, we could look to the observation in the legislative history that

---

license that *currently* permits the license holder to participate in hunting for the *current* season, rather than a hunting license that has been validly issued but does not allow hunting until the *upcoming* hunting season.

[7] To support its interpretation, San Diego Guns cites to the discussion in a now-vacated Ninth Circuit opinion. (*Jones v. Bonta* (9th Cir. 2022) 34 F.4th 704, 727, opn. vacated on rehg. (9th Cir. 2022) 47 F.4th 1124 (*Jones*).) That case cited to the federal district court's discussion purporting to describe the Legislature's purpose for enacting the exception set forth in former section 27510, subdivision (b)(1), as well as for subsequently removing semiautomatic centerfire rifles from the weapons that may be purchased under that exception. The Ninth Circuit quoted the district court as saying that "California's objective is 'to increase public safety through sensible firearm control and limit access to certain firearms for some Young Adults with proper safety training.'" (*Jones*, at p. 727 [quoting *Jones v. Becerra* (S.D.Cal. 2020) 498 F.Supp.3d 1317, 1330].) That discussion does not materially advance our understanding of the specific meaning of the phrase "valid, unexpired hunting license" in former section 27510, subdivision (b)(1). Not only did the district court fail to provide any citation to the relevant legislative history documents in describing the Legislature's purpose (*Jones v. Becerra*, at p. 1330), the district court's *broad* description of the legislative intent, whatever its source, does not resolve the *specific* question of statutory interpretation that we address in this opinion.

some persons between the ages of 18 and 20 engage in " 'impulsive or reckless behavior.' " (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1100 (2017-2018 Reg. Sess.) as amended June 11, 2018, p. 3.) That fact would support interpreting the phrase "valid, unexpired hunting license" to require that a young person *wait* until hunting season has commenced to obtain a firearm in order to prevent impulsive and reckless firearm use. On the other hand, Senate Bill No. 1100 was intended, generally, as "taking proper steps toward public safety." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1100 (2017-2018 Reg. Sess.) as amended June 11, 2018, p. 3.) In light of that general purpose, it could be argued that in creating the exception for a "valid, unexpired hunting license," the Legislature was most interested in making sure that a person under the age of 21 had taken the educational course that is required before obtaining a hunting license, which includes firearm safety instruction. (Fish & G. Code, § 3050, subd. (a)(3); *Jones*, *supra*, 34 F.4th at pp. 727-728, opn. vacated on rehg. [describing the value of a hunter education course in promoting public safety with respect to firearm use for persons under the age of 21].) Taking that view, it would not matter that the license is not yet valid for engaging in hunting. None of these observations are dispositive.[8]

---

[8] For the first time at oral argument, counsel for San Diego Guns advanced another argument for the view that, at the time Earnest purchased the rifle in April 2019, the Legislative intent was for "a valid, unexpired hunting license" to mean a license that had been issued but not yet expired. Specifically, counsel for San Diego Guns argued that any other meaning risked creating a statute that was unconstitutional under the Second Amendment to the United States Constitution. Although making that argument, counsel also stated that we did not need to reach the constitutional issue. Regardless of whether the constitutional issue could have any relevance here, we will not address it because it was raised for the

As Plaintiffs point out, however, effective January 1, 2022, the Legislature clarified the meaning of "a valid and unexpired hunting license" as that term is used in the relevant part of the Penal Code that deals with the control of deadly weapons. Newly enacted section 16685 states, "As used in this part, a valid and unexpired 'hunting license' means a hunting license issued by the Department of Fish and Wildlife . . . for which the time period authorized for the taking of birds or mammals *has commenced* but not expired."[9] (§ 16685, Stats. 2021, ch. 250, § 5, italics added.) A legislative committee report states that the new law was proposed *specifically* in light of Earnest's purchase of the rifle he used during the shooting at the Chabad of Poway synagogue. (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 715 (2021-2022 Reg. Sess.) as amended Feb. 19, 2021, p. 3.) "In 2019, a 19 year old illegally purchased a semiautomatic centerfire rifle from a dealer with [a]n *invalid* hunting license and tragically opened fire at a synagogue in Poway, CA. . . . [¶] This bill will address the outstanding circumstances uncovered in Poway, ensuring that background checks are done comprehensively so the same *mistakes* do not happen again." (*Ibid.*, italics added.)

---

first time at oral argument. (*People v. Carrasco* (2014) 59 Cal.4th 924, 990 [" 'Obvious reasons of fairness militate against consideration of an issue raised initially' at oral argument."]; *Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356, fn. 6 ["An appellate court is not required to consider any point made for the first time at oral argument, and it will be deemed waived."].)

9      "This part" in the statutory language refers to Part 6 of the Penal Code, Control of Deadly Weapons. Section 27510 falls under Part 6.

The definition of a "valid and unexpired hunting license" in section 16685 is the same definition advanced here by Plaintiffs.[10] Specifically, a hunting license is "valid" and "unexpired" only if it can *currently* be used to engage in hunting. Therefore, the question we must address is the extent to which the definition in section 16685 is applicable to determine the meaning of former section 27510, subdivision (b)(1).

The general rule is that unless the Legislature expressly states otherwise, or it is very clear from extrinsic sources that the Legislature must have intended a retroactive application, a newly enacted statutory provision applies prospectively only. (*McClung v. Employment Development Dept.* (2004) 34 Cal.4th 467, 475 (*McClung*); *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 841.)[11] However, our Supreme Court has also explained that "[a] statute that merely clarifies, rather than changes, existing law is properly applied to transactions predating its enactment." (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 922 (*Carter*).) "We assume the Legislature amends a statute for a purpose, but that purpose need not necessarily be to change the law. [Citation.] Our consideration of the surrounding circumstances can indicate that the Legislature made material changes in statutory language in an effort only to clarify a statute's true meaning. [Citations.] Such a legislative act has no retrospective effect because the true meaning of the statute remains the same." (*Western*

---

[10] Plaintiffs identified section 16685 to the trial court in their opposition briefing, but the trial court's ruling did not mention that provision.

[11] Although not relevant here, it is also presumed that the Legislature intended that "[n]ewly enacted legislation lessening criminal punishment or reducing criminal liability . . . applies to all cases not yet final on appeal at the time of the legislation's effective date." (*People v. Gentile* (2020) 10 Cal.5th 830, 852, citing *In re Estrada* (1965) 63 Cal.2d 740, 744-745.)

*Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 (*Western Security*).)

"In determining whether a statute clarified or changed the law, we give 'due consideration' to the Legislature's intent in enacting that statute. [Citation.] The Legislature's declaration of an existing statute's meaning, while not dispositive, is a factor entitled to consideration. [Citation.] We look to 'the surrounding circumstances' as well as the Legislature's intent when determining whether a statute changed or merely clarified the law." (*In re Marriage of Fellows* (2006) 39 Cal.4th 179, 184.) "Ultimately, the interpretation of a statute is an exercise of the judicial power the Constitution assigns to the courts. . . . Nevertheless, the Legislature's expressed views on the prior import of its statutes are entitled to due consideration, and we cannot disregard them." (*Western Security*, *supra*, 15 Cal.4th at p. 244.) However, "[a] declaration that a statutory amendment merely clarified the law 'cannot be given an obviously absurd effect, and the court cannot accept the Legislative statement that an unmistakable change in the statute is nothing more than a clarification and restatement of its original terms.' " (*McClung*, *supra*, 34 Cal.4th at p. 473.)

One circumstance indicating the Legislature intended to clarify an existing statute rather than to change the law " 'is when the Legislature promptly reacts to the emergence of a novel question of statutory interpretation[.]' [Citation.] ' " 'An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute. . . . [¶] If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a

15

legislative interpretation of the original act . . . .' " ' " (*Carter*, *supra*, 38 Cal.4th at p. 923.) Viewing a new statutory enactment as an attempt to clarify the meaning of an existing statute is especially warranted when, as here, the meaning of relevant language in the existing statute is plainly ambiguous. (*Id.* at p. 930 [noting the significance of the "ambiguity that existed in the language and legislative history of" the existing statute]; *In re J.C.* (2016) 246 Cal.App.4th 1462, 1479-1480 [when the language of a voter-adopted ballot initiative was ambiguous and there were "solid arguments both for and against" a certain interpretation, the Legislature's enactment clarifying the ambiguity was a clarification of existing law, not a change].)

Here, although the legislative history did not specifically use the word "clarify" in describing the Legislature's intent in enacting section 16685, it stated that the purpose of newly enacted section 16685 was to "*further define* a valid and unexpired hunting license." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 715 (2021-2022 Reg. Sess.) as amended Feb. 19, 2021, p. 2, italics added.) The legislative history unmistakably set forth the view that, at the time Earnest bought his rifle in 2019, the exception set forth in former section 27510, subdivision (b)(1) *already* required that the person obtaining the weapon must have a hunting license that was *currently* valid for engaging in hunting. Specifically, the legislative history stated that in the Chabad of Poway shooting, "[t]he shooter obtained a semi-automatic firearm, despite being under the age of 21, with a hunting license *that was not yet valid*." (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 715 (2021-2022 Reg. Sess.) as amended June 21, 2021, p. 2, italics added.) According to the legislative history, San Diego Guns' sale of the rifle to Earnest was a "mistake[ ]" because the hunting license was "invalid." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 715 (2021-2022 Reg. Sess.) as

16

amended Feb. 19, 2021, p. 3.) The legislative history also quoted the view of a group in opposition to the legislation, the California Rifle and Pistol Association, stating that under the law as it existed at the time, a "valid" hunting license is one that can *currently* be used for hunting: "[D]o we really need legislation to define what a valid hunting license is? Doesn't the date printed on the license do that?" (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 715 (2021-2022 Reg. Sess.) as amended Feb. 19, 2021, p. 5.)[12]

As in the cases where a recent appellate court opinion made the Legislature aware that a preexisting statute was in need of clarification (see, e.g., *Carter*, *supra*, 38 Cal.4th at p. 930; *Western Security*, *supra*, 15 Cal.4th at pp. 241-242), the circumstances surrounding the then-recent Chabad of Poway shooting brought to the Legislature's attention that, unless clarified, there was a risk that the term "valid and unexpired" hunting license would continue to be misapplied in a manner that the Legislature did not intend. By " 'promptly react[ing] to the emergence of a novel' " question of statutory interpretation (*Carter*, at p. 923) regarding the term "valid and unexpired hunting license," the Legislature enacted section 16685 to clear up the ambiguity and prevent any *further* mistakes like the one made in selling the rifle to Earnest.[13] Therefore, in light of the legislative history, coupled with

---

[12] If nothing else, the statement by the California Rifle and Pistol Association shows that we would not be giving "an obviously absurd effect" (*McClung, supra*, 34 Cal.4th at p. 473) to section 16685 in concluding that the Legislature intended it to clarify the *already-existing* meaning of a "valid" and "unexpired" hunting license.

[13] Although the version of section 27510, subdivision (b)(1) that was in force when San Diego Guns sold the rifle to Earnest in 2019 is no longer effective, the Legislature's clarification of the term "valid and unexpired hunting license" in section 16685 is relevant to influence future conduct

17

our view that the term "valid, unexpired hunting license" in former section 27510 is ambiguous, we conclude that in enacting section 16685, the Legislature intended to *clarify* the meaning of the term "valid, unexpired hunting license" in former section 27510, rather than to *change* the law.

Applying section 16685 to inform our interpretation of former section 27510, the undisputed facts establish that Earnest did *not* possess a "valid, unexpired hunting license" in April 2019 when San Diego Guns sold him the rifle. Earnest's hunting license did not become valid until it could be used for engaging in hunting on July 1, 2019.[14] Accordingly, the trial court erred in ruling in favor of San Diego Guns on its motion for summary adjudication on the causes of action that were based on the doctrine of negligence per se.

---

because the current version of the statute contains a different exception that applies to a person under the age of 21 who possesses a "valid, unexpired hunting license." (§ 27510, subd. (b)(1).) In addition, the Penal Code currently refers to a "valid" and "unexpired" hunting license as an exception, except for handguns, to the requirement that a person purchasing a firearm have a firearm safety certificate. (§ 31700, subd. (c).)

[14] Because we rule in favor of Plaintiffs based on our conclusion that Earnest's hunting license was not valid until July 1, 2019, we need not, and do not, address Plaintiffs' argument that the sale of the rifle occurred on April 13, 2019, when Earnest paid for it (and before he obtained a hunting license on April 15, 2019), rather than on April 26, 2019, when he took possession of the rifle.

DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to vacate that part of its January 10, 2023 order that grants summary adjudication to San Diego Guns on Plaintiffs' causes of action seeking relief based on the doctrine of negligence per se. Plaintiffs shall recover their costs in this writ proceeding.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

BUCHANAN, J.

19