Filed 10/1/15

<u>CERTIFIED FOR PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ROSA LEE CARDENAS,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>M. FANAIAN, D.D.S., INC.,<br><br>     Defendant and Appellant. | F069305<br><br>(Super. Ct. No. 11 CECG 03853)<br><br>**OPINION** |

        APPEAL from a judgment of the Superior Court of Fresno County.  Donald S. Black, Judge.

        Williams, Brodersen & Pritchett and Steven R. Williams for Defendant and Appellant.

        Bryant Whitten, Shelley G. Bryant and Amanda B. Whitten for Plaintiff and Respondent.

After Rosa Lee Cardenas reported to the Reedley Police Department that a coworker may have stolen her wedding ring at her workplace, she was terminated from her employment as a dental hygienist. Cardenas filed a lawsuit against her employer, M. Fanaian, D.D.S., Inc. (defendant), and against Masoud Fanaian, D.D.S. (Dr. Fanaian) individually, seeking to recover compensatory damages based on two distinct causes of action: (1) retaliation in violation of Labor Code[1] section 1102.5 (forbidding employers from retaliating against employees who report violations of law to a law enforcement agency) and (2) wrongful termination in violation of public policy under *Tameny v. Atlantic Richfield Co*. (1980) 27 Cal.3d 167 (*Tameny*).[2] The jury found in favor of Cardenas on both causes of action and awarded her $117,768 in damages. The trial court entered judgment on the verdict against defendant.[3]

Defendant now appeals from the judgment, arguing that it did not violate any fundamental public policy in terminating Cardenas's employment. Defendant further argues the trial court erred by excluding evidence that the real reason Cardenas filed a police report was to serve her private interest, not a public purpose. Cardenas responds that defendant's appeal addresses only the *Tameny* cause of action for wrongful termination in violation of public policy. Since defendant's opening brief on appeal does not challenge the other distinct theory of recovery supporting the verdict and judgment (i.e., retaliation in violation of section 1102.5), Cardenas argues that the appeal must

---

[1] Unless otherwise indicated, all further statutory references are to the Labor Code.

[2] In *Tameny*, the Supreme Court held that when an employer's termination of an employee violates fundamental principles of public policy, the employee may maintain a tort action and recover damages for wrongful termination in violation of public policy. (*Tameny*, *supra*, 27 Cal.3d at p. 170.) For convenience, this particular theory of liability is sometimes referred to herein as Cardenas's *Tameny* cause of action.

[3] The trial court did not enter judgment against Dr. Fanaian individually because Cardenas failed to show alter ego liability.

fail.[4]  Nevertheless, this court asked the parties to submit letter briefs on the questions of whether section 1102.5, subdivision (b) (hereafter section 1102.5(b)) depends on whether the employee's report to law enforcement concerns conduct that is related to the employment operation or enterprise and whether it applies to an employee who files a report to law enforcement alleging a violation of law relating to a private or individual matter.

Additionally, Cardenas asserts that a section 1102.5 cause of action stands alone and does not require a separate showing that the employee's subjective motivation and/or the particular crime he or she reported concerned a fundamental public policy.  Rather, Cardenas notes that section 1102.5 itself, where the section was violated by the employer, embodies a sufficient public policy for purposes of permitting an award of damages.  We agree with Cardenas's statutory analysis.  In particular, we hold that the plain and unambiguous language of section 1102.5(b) creates a cause of action for damages against an employer who retaliates against an employee for reporting to law enforcement a theft of her property at the workplace.  Accordingly, we affirm the judgment of the trial court.[5]

## FACTS AND PROCEDURAL HISTORY

In August 2009, Cardenas began working as a dental hygienist for Dr. Fanaian's dental office.  Dr. Fanaian's practice was incorporated under the name of M. Fanaian, D.D.S., Inc., and said corporate entity was technically Cardenas's employer.

In celebration of their 25th wedding anniversary in 2010, Cardenas's husband bought her a new, expensive wedding ring.  Cardenas always wore the ring to work, but placed it in the blouse pocket of her scrubs at the start of each workday.  On Monday, October 11, 2010, Cardenas wore her wedding ring to work as she always did, but when

---

[4]     Defendant's reply brief also fails to challenge that part of the verdict based on a violation of section 1102.5.

[5]     We sustain the judgment based on the statutory cause of action under section 1102.5 only.  We do not address the *Tameny* cause of action, because it is unnecessary to do so.

3.

she left work that day, the ring was missing. She testified that she took the ring off that morning and placed it on the breakroom table with her cell phone and other belongings. Meanwhile, she put her lunch in the office refrigerator and engaged in small talk with a coworker. A few minutes later, when Cardenas collected her belongings from the table, she noticed her wedding ring was not there, but she assumed she must already have put it in the blouse pocket of her scrubs. When she left the office at the end of that day, she realized she did not have her ring. She called coworkers to ask if they had seen the ring, and she returned to the office on more than one occasion to search for it, but did not find it. She also searched the parking lot, her car and home, to no avail.

Cardenas had reason to suspect her ring had been stolen at work by a coworker. She testified that when she informed Dr. Fanaian of her decision to file a police report, he did not support her decision and even asked her not to tell the police that she had left the ring on the breakroom table at work. According to Cardenas, Dr. Fanaian ultimately told her, "[D]o what you feel like you need to do," but he seemed upset or angry.

Cardenas and her husband, an officer with the Fresno Police Department, reported the theft of the ring to the Reedley Police Department. Cardenas's husband initiated the police report on or about October 21, 2010. On October 24, 2010, Cardenas gave a formal statement to the Reedley Police Department regarding what happened, including her reasons for suspecting that the ring was stolen by a coworker in the workplace. In investigating the matter, police officers came to the dental office and questioned office personnel. Dr. Fanaian was upset that the police had come to the office and he told Cardenas that her husband was "making the situation worse."

On November 10, 2010, Dr. Fanaian met with Cardenas and told her that the police had recently been to the office a second time. He told Cardenas that the situation was causing great tension and discomfort among the staff, and that he was going to have to let her go. He gave her her last paycheck and allowed her to collect her family photographs and other belongings from her desk. At trial, Dr. Fanaian asserted that he

4.

was just giving her a 30-day cooling-off period, but Cardenas disputed that assertion and testified that Dr. Fanaian had clearly terminated her employment. She told the jury that she could not have misunderstood what Dr. Fanaian had said; he had fired her.

Cardenas's ring was found at the office the next day.

On November 7, 2011, nearly one year later, Cardenas filed her civil complaint for damages in Fresno County Superior Court. The complaint alleged two distinct causes of action: (1) retaliation in violation of section 1102.5 and (2) wrongful termination in violation of public policy. Cardenas alleged in both causes of action that she was terminated in retaliation for reporting the theft of her wedding ring to the police.

Early in the litigation, defendant moved for judgment on the pleadings, arguing that Cardenas failed to state a cause of action. As to the section 1102.5 retaliation cause of action, defendant argued that reporting an unlawful act of *a coworker* was insufficient. The trial court disagreed, citing recent Court of Appeal precedent to the contrary. Defendant challenged the *Tameny* claim on the ground that there was no fundamental public policy involved. Again, the trial court disagreed. The trial court noted that in cases where the employee reported reasonable suspicions of unlawful conduct directly to law enforcement (rather than merely to the employer), section 1102.5 applied and furnished the necessary public policy: "Since she did report directly to the police, and since there is a strong public policy in favor of reporting suspected criminal conduct to law enforcement, the court … find[s] that [Cardenas] has stated a valid claim for wrongful termination." The motion for judgment on the pleadings was denied.

Prior to trial, Cardenas filed a motion in limine seeking to exclude evidence that she reported the theft of her wedding ring to the police for private or personal reasons— namely, so that she could either get her ring back or make a claim on her homeowner's insurance policy. Defendant intended to introduce such evidence to show that the police report did not concern a matter of public policy, but merely involved Cardenas's individual interests. Cardenas's motion in limine claimed that such evidence was

5.

irrelevant and potentially prejudicial. The trial court indicated it was inclined to agree with Cardenas's position that the evidence was irrelevant because "the focus here is not on the specific police report involved in the case, but rather on the broader policy of encouraging people to report alleged criminal conduct." Accordingly, the trial court granted Cardenas's motion in limine.

The case proceeded to a trial by jury. After Cardenas rested her case in chief, defendant moved for nonsuit regarding the cause of action for wrongful termination in violation of public policy, arguing that Cardenas failed to prove that her termination involved a fundamental public policy. The trial court denied the nonsuit motion.

When both parties rested, the trial court instructed the jury on both theories of recovery asserted by Cardenas. The special verdict form required the jury to make factual findings on all of the essential elements of both causes of action. The jury did so. Checking the boxes on the special verdict form, the jury found that the elements of the retaliation claim under section 1102.5 were established, including that Cardenas's report to the police was a motivating reason for defendant's termination of her employment. The jury likewise found that the elements of the wrongful termination in violation of public policy claim were established, including that Cardenas's "report about unlawful activity [was] a motivating reason for [defendant's] decision to discharge [her]." Under a separate heading on the special verdict form relating to compensatory damages, the jury was asked, "What are [Cardenas's] damages?" The jury awarded a total of $117,768 for past economic losses, including lost earnings.

On January 21, 2014, a judgment on the verdict was entered in favor of Cardenas and against defendant in the amount of $117,768. Defendant's timely appeal followed.

## DISCUSSION

### I. Standard of Review

Defendant's primary argument on appeal is that Cardenas had no viable cause of action for wrongful employment termination because, as a matter of law, there was no

fundamental public policy violation in connection with her firing. We review de novo this issue of law. (See *Green v. Ralee Engineering Co*. (1998) 19 Cal.4th 66, 72 (*Green*).) Questions of statutory construction are reviewed de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.)

## II. Defendant's Failure to Address the Section 1102.5 Cause of Action in its Opening and Reply Briefs

The judgment of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133). Because of this presumption of correctness, error must be affirmatively shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Thus, an appellant must affirmatively demonstrate prejudicial or reversible error based on sufficient legal argument supported by citation to an adequate record. (*Yield Dynamics, Inc. v. TEA Systems Corp*. (2007) 154 Cal.App.4th 547, 556–557 (*Yield Dynamics*).) "[A]n appellant must present argument and authorities on each point to which error is asserted or else the issue is waived." (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 867.) Further, an appellant must not only show that an error occurred, but that it affected the outcome of the judgment. (*Yield Dynamics*, *supra*, at p. 557.) Matters not properly raised or that are lacking in adequate legal discussion will be deemed forfeited. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656 [an appellant should also include proper headings for each point being raised].) Generally speaking, matters raised for the first time in the appellant's reply brief will not be considered. (*Id.* at p. 656; *Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3.)

Here, defendant's opening brief on appeal expressly acknowledges that (1) Cardenas sought damages under *two* causes of action (namely, retaliation in violation of section 1102.5 and wrongful termination in violation of public policy) and (2) the jury found for Cardenas on both causes of action and awarded compensatory damages in the sum of $117,768. Defendant's opening brief discusses at length its assertion that there

was no *public policy* violation to support the wrongful termination claim. A related argument is made that the trial court erred in excluding evidence of the private reasons (e.g., insurance) Cardenas filed the police report. However, no meaningful discussion or analysis is presented in the opening brief that specifically challenges or even addresses the separate cause of action for retaliation in violation of section 1102.5.

In her respondent's brief, Cardenas argues that defendant did not meet its burden on appeal of demonstrating potential grounds for reversal of the judgment because in its opening brief defendant addressed only one of the two causes of action. We agree. Inasmuch as the section 1102.5 retaliation claim remains a distinct cause of action and supporting basis for the judgment, defendant's failure to address that cause of action in its opening brief would ordinarily be fatal to the appeal. Defendant's reply brief states that it would have been "an exercise of folly" for it to address only one of the causes of action, explaining that its line of argument in the opening brief was meant to apply to both causes of action, even if that fact was not explicitly stated. We do not believe defendant's cursory explanation in the reply brief is sufficient to overcome its oversight. (See, e.g., *Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482 [an appellant's perfunctory argument was deemed forfeited where it "failed to provide any adequate legal analysis in its opening brief of … causes of action and the potentially complex legal analysis necessary" to deciding same].)

Despite the failure of defendant's opening and reply briefs to specifically address the section 1102.5 cause of action, this court solicited the parties' views on the scope of section 1102.5. Defendant did respond with argument and authorities in support of its position—expressed for the first time on appeal—that section 1102.5 does not support a cause of action on these facts because Cardenas's report to the police concerned a personal matter and not something related to the business enterprise of defendant. Thus, we decline to affirm the judgment based on defendant's failure to address the section 1102.5 cause of action in its opening and reply briefs.

**III.    The Judgment is Supported by the Section 1102.5 Cause of Action**

**A.    A Section 1102.5 Claim is a Stand-alone Cause of Action**

Section 1102.5(b) protects an employee from retaliation by his or her employer for disclosing information to a law enforcement agency where the employee has reasonable cause to believe that the information discloses a violation of state or federal law.  (*Hager v. County of Los Angeles* (2014) 228 Cal.App.4th 1538, 1548 (*Hager*).)  Section 1102.5 has been recognized as creating a right that did not exist at common law.  (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 328.)  Section 1102.5(b) has been broadly construed to protect an employee from retaliation by his or her employer even where the report to law enforcement concerned a violation of law committed by a fellow employee or contractor, and not by the employer.  (*Hager*, *supra*, at p. 1552; *McVeigh v. Recology San Francisco* (2013) 213 Cal.App.4th 443, 469–471 (*McVeigh*).)  At the time of the trial below, section 1102.5(b) was worded as follows:  "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."  Amendments to this subdivision, effective on January 1, 2014 (Stats. 2013, ch. 781, § 4.1), do not affect the issues in the present appeal.[6]

Section 1102.5 is contained in chapter 5 of division 2, part 3 of the Labor Code. Section 1103 provides that an employer who violates "this chapter" is guilty of a misdemeanor.  Section 1105 of the same chapter provides:  "Nothing in this chapter shall prevent the injured employee from recovering damages from his employer for injury suffered through a violation of this chapter."  Section 1105 has been judicially construed

---

**6**    Because our analysis would be the same under both the former and current versions of section 1102.5(b), we do not distinguish them herein.

as creating a civil right of action for damages (*Lockheed Aircraft Corp. v. Superior Court* (1946) 28 Cal.2d 481, 486; *Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 604, fn. 9 [noting § 1105 provides private right of action for damages for statutory violation]), including for a violation of section 1102.5 (*Gardenhire v. Housing Authority* (2000) 85 Cal.App.4th 236, 240–241 (*Gardenhire*) [damage award affirmed]).  Thus, where an employee is harmed by retaliation in violation of section 1102.5, he or she is entitled to maintain a damage cause of action against the employer.

As a statutory cause of action, a claim for retaliation in violation of section 1102.5(b) is treated by the courts as a stand-alone theory of recovery distinct from a common law *Tameny* claim.  For example, in *Lloyd v. County of Los Angeles* (2009) 172 Cal.App.4th 320 (*Lloyd*), the Court of Appeal upheld the trial court's adjudication of common law *Tameny* claims (including those premised on the public policies embodied in section 1102.5 and related whistleblower statutes) since such *common law* liability was barred by the Government Claims Act (Gov. Code, § 810 et seq.).  However, the Court of Appeal did not treat the distinct *statutory* cause of action for retaliation under section 1102.5 in the same manner.  (*Lloyd*, *supra*, at pp. 329–331.)  Similarly, in *McVeigh*, the Court of Appeal separately discussed and analyzed the *statutory* cause of action for retaliation under section 1102.5, considering the particular elements thereof and holding that summary adjudication was erroneously granted by the trial court on that cause of action before moving on to discuss the *common law Tameny* cause of action. (*McVeigh*, *supra*, 213 Cal.App.4th at pp. 468–472.)[7]  The foregoing appellate decisions, including the manner in which they addressed the subject causes of action, reflect that a statutory claim under section 1102.5 stands on its own and does not depend on the

---

[7]    Indeed, a footnote in *McVeigh* even suggested that a statutory claim under section 1102.5 could be maintained (because the statutory elements were satisfied) even if a *Tameny* claim could not (because the fraud arguably affected only the employer and not the general public's interest).  (*McVeigh*, *supra*, 213 Cal.App.4th at pp. 472–473, fn. 9.)

10.

sustainability of a *Tameny* claim on the same facts. In other words, a section 1102.5 retaliation claim is based *on the statute itself*, which has been construed as providing for a right of action for damages, while a common law *Tameny* claim is based on whether or not a fundamental public policy was violated by the employment termination.

Consistent with what has been said, we note further that a section 1102.5(b) retaliation cause of action has its own discrete elements for recovery. (*Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1384.) To establish a prima facie case of retaliation under section 1102.5(b), a plaintiff "'must show (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the two.'" (*McVeigh*, *supra*, 213 Cal.App.4th at p. 468.) An employee engages in protected activity under section 1102.5(b) when he or she discloses to a governmental agency reasonably based suspicion of illegal activity. (*McVeigh*, *supra*, at p. 469.) "If the plaintiff meets his [or her] prima facie burden, the defendant has the burden to prove a legitimate, nonretaliatory explanation for its actions. To prevail, the plaintiff has to show that the explanation is a pretext for the retaliation." (*Hager*, *supra*, 228 Cal.App.4th at p. 1540.) Where the plaintiff succeeds in proving a violation of section 1102.5(b), compensatory damages are recoverable. (See *Gardenhire*, *supra*, 85 Cal.App.4th at pp. 237, 240–241 [economic and emotional distress damages awarded for violation of § 1102.5].) As should be apparent, nothing in the enumeration above of the prima facie elements for recovery indicates that, where a statutory violation under section 1102.5 is proven, the trial court must *also* scrutinize the plaintiff's motives or the particular crimes reported to make sure they are "public" enough. (*Mize-Kurzman v. Marin Community College Dist.* (2012) 202 Cal.App.4th 832, 850 [the motivation of the party reporting illegal activity is irrelevant to the consideration of whether activity is protected].)

**B.**   **A Section 1102.5 Cause of Action Does Not Require Proof of a Violation of Public Policy**

Defendant cites a number of cases that carefully considered the extent of the "public" nature of the public policy interest at stake. (E.g., *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 665–670 (*Foley*); *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1089–1097; *Hunter v. Up-Right, Inc.* (1993) 6 Cal.4th 1174, 1180; *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 887–890; *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1158–1161.)  *Foley* states typical language on this point—the policy must "inure[] to the benefit of the public at large rather than to a particular employer or employee." (*Foley*, *supra*, at p. 670.)  Importantly, none of these cases involved a direct employer violation of section 1102.5(b), but rather were attempts by the plaintiffs therein to state common law *Tameny* claims.[8]  The gist of these cases was that common law *Tameny* claims for wrongful termination in violation of public policy must be predicated upon a clear, fundamental, well-established public policy articulated in, or closely tethered to, statutory or constitutional provisions.  We fully agree with these principles in the context of common law *Tameny* claims.  Here, however, we are considering Cardenas's distinct statutory claim under section 1102.5.  Cardenas's claim for retaliation in violation of section 1102.5 is distinguishable from a common law *Tameny* claim, since the former entails a statutory right of action for damages.

The special verdict findings bring this case squarely within the parameters of section 1102.5.  The jury determined that Cardenas reported a workplace theft of her property to the police.  Theft is a violation of the law.  (Pen. Code, § 484.)  The jury

---

[8]    *Foley* is also distinguishable because it involved an internal report to management, not a report to a law enforcement agency, of a violation of law. (*Foley*, *supra*, 47 Cal.3d at pp. 669–670 [noting case did not involve the situation of an employee "who reports criminal activity to proper authorities"].)  Thus, the court in *Foley* noted the termination did not come within the scope of the former version of section 1102.5. (*Foley*, *supra*, at p. 670, fn. 10.)  That was also the case in *Green*, *supra*, 19 Cal.4th at page 77 (noting that former § 1102.5 did not protect the plaintiff in that case since the statute concerned "employees who report to public agencies," but the plaintiff reported his suspicions to his employer).

found that she was subsequently terminated from her employment and that her report to the police was a motivating reason for her termination. Thus, she engaged in protected activity, was subjected to an adverse employment action and there was a causal link between the two. (*McVeigh*, *supra*, 213 Cal.App.4th at p. 468.) She met all of the statutory elements of a claim under section 1102.5. She was not required to prove anything more.

### C. A Section 1102.5 Claim is Not Limited to Protecting Against Employer Retaliation for Reporting Violations of Law Arising Out of the Employer's Business Activities

Defendant's letter brief contends that the Legislature intended to limit the application of section 1102.5 to employee disclosures of information to a government or law enforcement agency concerning employer "business enterprise wrongdoing" and, therefore, Cardenas's report to the police of the theft of her wedding ring at the workplace was not protected activity within the meaning of the statute.[9]

The starting point for ascertaining legislative intent always begins with the plain language of the statute. Courts are obligated to ascribe the ordinary and usual meaning to statutory language (*People v. Watson* (2007) 42 Cal.4th 822, 828; *Catlin v. Superior Court* (2011) 51 Cal.4th 300, 304) because it is generally the most reliable indicator of legislative intent (*People v. King* (2006) 38 Cal.4th 617, 622). "If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls." (*Fitch v. Select Products Co.* (2005) 36 Cal.4th 812, 818.) We refer to this principle of statutory interpretation as the plain meaning rule.

---

[9] The record below does not establish whether the ring was actually stolen and, if so, by whom, or if it was simply misplaced. Under defendant's interpretation of section 1102.5, even if it was Dr. Fanaian who stole Cardenas's ring, section 1102.5 would not support a cause of action for Cardenas because the violation of law (theft) did not arise out of the employer's business activities, i.e., dentistry practice.

13.

The words used in section 1102.5(b) contain no ambiguity nor has one been identified by defendant or our dissenting colleague. The language that an employer "shall not retaliate against an employee for disclosing information … to a government or law enforcement agency … if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute" plainly applies to the factual scenario of this case. (*Ibid.*) An employee, Cardenas, reported to a law enforcement agency that she believed a theft had occurred at the workplace. The jury found that Cardenas was later terminated by the employer and that a motivating reason for her termination was the report she made to law enforcement.

Defendant would have us insert additional, limiting language into the statute, namely, that the report to law enforcement must relate directly to the employment enterprise and not private or individual matters. This we cannot do. Even if the Legislature intended to limit the statute's application to reports of wrongdoing concerning the employer's enterprise, operations or practices, courts are not authorized to disregard the plain meaning of statutory language in order to conform it to a court's opinion of legislative intent. That would convert our judicial function into that of a legislative one. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632–633 (*California Teachers Assn.*).) Indeed, Code of Civil Procedure section 1858 provides that a court must not insert what has been omitted from a statute. (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998 & fn. 3; *People v. Guzman* (2005) 35 Cal.4th 577, 586–587.)

Even if it was proper for us to resolve this case by ascertaining legislative intent, there is no more definitive way to ascertain that intent than by examining the words of the statute. (*People v. King*, *supra*, 38 Cal.4th at p. 622 [""""statutory language is generally the most reliable indicator of legislative intent"""].) Section 1102.5 makes no mention, express or implied, that its protections are limited to reports of unlawfulness concerning an employer's enterprise, operations or practices. The Legislature could have written that

limitation into the statute. In fact, the Legislature did so when it enacted the California Whistleblower Protection Act (CWPA) (Gov. Code, § 8547 et seq.), which applies to *state* employees. The CWPA's protection only extends to reports of "'[i]mproper governmental activity,'" which is defined as activity by a state agency or employee that is undertaken in the performance of the employee's duties (Gov. Code, § 8547.2, subd. (c)) or reports of a condition that may significantly threaten the health or safety of employees or the public (*id.*, subd. (e)). Under the CWPA, a state employee would not be protected against an employer who terminated the employee in retaliation for reporting a crime committed by a coworker that did not arise out of the performance of the employee's duties or affect the health and safety of employees or the public. With state employees, the Legislature specifically and expressly limited the whistleblower protection to reports of wrongdoing *arising out of the performance of the employee's duties*. In other words, a state employee's report to police that her wedding ring was stolen by a coworker would *not* be protected activity under the CWPA. It strains logic to conclude that the Legislature only intended section 1102.5 to protect employees who report matters concerning the business activities of the employer when the statutory language does not say that when the Legislature has expressly included such limiting language in a similar statute pertaining to state employees.**[10]**

Section 1102.5 does not contain any language, such as that included in the CWPA applicable to state employees, which would limit the statute's protections to reports of wrongdoing concerning the employer's business enterprise. There is ample case

---

**[10]** The predecessor legislation to CWPA was enacted in 1979 and entitled the "Reporting of Improper Government Activities Act." It protected state employees from adverse employment action arising from good faith reporting of "improper government action," defined as action by a state agency or employee which is undertaken in the performance of such employee's official duties …." (Former Gov. Code, § 10540 et seq.) Thus, before Labor Code section 1102.5 was enacted in 1984, the Legislature knew how to limit whistleblower protection to reporting of unlawful activities arising out of the employee's official duties. The Legislature did not impose a similar limitation in section 1102.5.

authority upholding the principle that where it is shown the Legislature knows how to use language to express a specific legal requirement and fails to use that language in a particular statute, the absence of such language in a different but similar enactment is evidence that the Legislature did not intend to impose that requirement.  (*People v. Murphy* (2001) 25 Cal.4th 136, 143 ["electorate and Legislature have both shown that they know how to use language expressly requiring a violation of [Penal Code] section 288 when that is their intent.  The omission of such language … undermines [the] defendant's assertion that it 'obvious[ly] refer[s] … to a violation of [Penal Code] section 288, subdivision (a)'"]; *In re Jennings* (2004) 34 Cal.4th 254, 273 ["'It is a settled rule of statutory construction that where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to different statutes.'"]; *Bernard v. Foley* (2006) 39 Cal.4th 794, 811 ["The Legislature's failure to include an express friendship exception within the statutory scheme is significant, because the Legislature knows how to craft such an exception when it wishes to do so."]; *County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 824–825.)  It is reasonable to deduce that if the Legislature had intended to limit the reach of the statute to an employee's reporting of illegalities involving the activities of the employer's business, it would have included language to effectuate that intent.  It did not.  In any event, the business of writing statutes belongs with the Legislature, not with the courts.  The courts do not, and should not, rewrite a statute so as to make it conform to a presumed intention that is not expressed. (*California Teachers Assn.*, *supra*, 14 Cal.4th at pp. 632–633.)

In support of its contention that section 1102.5(b) does not apply to the facts of this case, the dissent relies exclusively on the wording of the statute's uncodified

preamble. (See Stats. 2003, ch. 484, § 1).[11] We disagree with the dissent's position. First of all, the preamble, while reflecting the Legislature's concern about the specific issue of corporate or employer wrongdoing, does not limit the reach of the statute to reports of such conduct. (*Ibid.*) As was rightly observed by the Court of Appeal in *McVeigh*, *supra*, 213 Cal.App.4th at page 470, the preamble does not alter the clear meaning and broad scope of the operative language in section 1102.5(b): "While the … language in this preamble exhibits the Legislature's intent to deter employer misconduct, it cannot properly be read to limit the reach of Labor Code section 1102.5, subdivision (b) to reports of employer misbehavior." Instead, because "[t]he statute *by its terms* protects reports of unlawful conduct," it applied to reports of unlawful conduct by fellow employees. (*McVeigh*, *supra*, at p. 470, italics added.) Thus, despite the preamble's discussion about the "'unlawful activities of private corporations,'" "'corporate wrongdoing,'" and encouraging employees to report to the authorities when "'their employer'" has violated the law, *McVeigh* had no difficulty rejecting the argument that such wording limited the reach of the statute to reports of employer misconduct. (*Id.* at pp. 470–471, italics omitted.) Our case presents a similar question as was addressed in *McVeigh*: should section 1102.5(b) be construed narrowly based on the language of the preamble or be construed broadly based on the plain meaning of the statute? Applying the reasoning in *McVeigh* to our case, the broader interpretation prevails. In other words, although the Legislature expressed concerns about corporate wrongdoing in the preamble, the statutory wording it adopted in writing section 1102.5(b) clearly reflected a broader public policy purpose of protecting employees who report other violations of the law as well. (See *Green*, *supra*, 19 Cal.4th at p. 77 ["This provision reflects the broad

---

[11]     In the preamble, the Legislature expresses concern about the need to deter "corporate wrongdoing" and also expresses that the public policy of the state is to "encourage employees" to inform law enforcement when they have reason to believe "their employer" is violating the law. (Stats. 2003, ch. 484, § 1, pp. 3517–3518.)

17.

public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation."].)

Second, although it is proper to consider the preamble, it is merely an "'aid'" to our review and is not controlling. (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 925 (*Carter*).)[12] Since, as noted above, the preamble does not expressly state an intention to limit the statutory reach, any light the preamble may shed on that particular issue is, at best, uncertain. Moreover, where a preamble of this sort is weighed against the plain meaning of the substantive statute, we have no doubt that the plain meaning must prevail. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1118 (*Briggs*); *Yeager v. Blue Cross of California* (2009) 175 Cal.App.4th 1098, 1103.) Even if there were a more direct conflict apparent between the preamble and section 1102.5(b) regarding the scope of the statute, we believe the plain meaning of the statute would control over a preamble that merely serves as an aid to our analysis. (See *Briggs*, *supra*, at pp. 1119–1120.) The rule is well established that "[i]f the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning *controls*." (*Fitch v. Select Products Co.*, *supra*, 36 Cal.4th at p. 818, italics added.) Similarly, "[i]f the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning *governs*." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190, italics added.) Aids to interpretation are of benefit when there is ambiguity or the statute is reasonably susceptible to more than one interpretation (*Catlin v. Superior Court*, *supra*, 51 Cal.4th at p. 304); but "[w]hen the language of a statute is clear, *we need go no further*" (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340, italics added). That is the case here: the language of section 1102.5(b) is clear; we

---

**12**      In *Carter*, the Supreme Court explained: "'In considering the purpose of legislation, statements of the intent of the enacting body contained in a preamble, while not conclusive, are entitled to consideration. [Citations.] Although such statements in an uncodified section do not confer power, determine rights, or enlarge the scope of a measure, they properly may be utilized as an aid in construing a statute. [Citations].'" (*Carter*, *supra*, 38 Cal.4th at p. 925.)

18.

need not go beyond the operative words thereof to know what it means. While it is proper to consider the uncodified preamble (*Carter*, *supra*, at p. 925)—which we have done—the preamble here does nothing to change our minds regarding the plain meaning of section 1102.5(b).[13]

In *Yeager v. Blue Cross of California*, *supra*, 175 Cal.App.4th at page 1103, the Court of Appeal stated as follows: "Legislative findings and statements of purpose in a statute's preamble can be illuminating if a statute is ambiguous. [Citation.] But a preamble is not binding in the interpretation of the statute. Moreover, the preamble may not overturn the statute's language. [Citations.] Here, no ambiguity exists in the statute to help [the] appellant; the statute obligates Blue Cross to *offer* coverage, and Blue Cross did so. The Legislature's refusal to dictate the amount of coverage and its cost is not ambiguity—it is silence. We may not make a silent statute speak by inserting language the Legislature did not put in the legislation. [Citation.]" (Fn. omitted.) These principles have equal applicability in our case. The preamble's expression of concern about corporate wrongdoing does not overturn the statute's unambiguously broad terms, nor does it permit us to insert a special limiting provision that the Legislature left out.

The dissent notes that "[a]n uncodified section is part of the statutory law." (*Carter*, *supra*, 38 Cal.4th at p. 925.) While that may be correct, it does not elevate a statutory preamble beyond that of an "'aid'" in our analysis. (*Ibid*.) And when we consider the preamble's statement of intent in this case against the plain meaning of the operative language in section 1102.5(b), we believe the latter prevails. The analysis used by the Supreme Court in *Briggs*, *supra*, 19 Cal.4th 1106, regarding the anti-SLAPP statute (Code Civ. Proc., § 425.16) is instructive. There, the court stated: "Contrary to [the] plaintiffs' suggestion, that the Legislature, when enacting section 425.16, expressed

---

**13**    In contrast to section 1102.5(b), the statute at issue in *Carter* was "ambiguously worded" and "susceptible of two conflicting interpretations." (*Carter*, *supra*, 38 Cal.4th at pp. 926, 927.)

in the statute's preamble a desire to 'encourage continued participation in matters of public significance' (§ 425.16, subd. (a)) does not imply the Legislature intended to impose, in the statute's operative sections, an across-the-board 'issue of public interest' pleading requirement." (*Briggs*, *supra*, at p. 1118.)  Instead, the court was persuaded by the clear language of the operative provisions of section 425.16, subdivision (e)(1) and (2), that there need not be a separate finding of public significance or public concern under those provisions.  (*Briggs*, *supra*, at p. 1119.)  The court noted that such a construction was consistent with the anti-SLAPP statute's broader purpose of protecting constitutional rights of freedom of speech and petition, "as well as with the statute's plain language." (*Briggs*, *supra*, at p. 1119.)  Although the court did observe the legislative history to buttress its conclusion, it held that "[w]here, as here, legislative intent is expressed in unambiguous terms, we must treat the statutory language as conclusive; 'no resort to extrinsic aids is necessary or proper.'" (*Id*. at pp. 1119–1120.)  In the end, despite the codified preamble's focus on matters of public significance, the plain meaning of the operative provisions controlled the outcome in *Briggs*.  Following the approach in *Briggs*, we conclude the plain meaning of section 1102.5(b) controls in the present case.

## IV. Conclusion

Section 1102.5 prohibits an employer from retaliating against an employee who discloses information to law enforcement where the employee has a reasonable belief that a violation of law has occurred.  That is what happened here.

## **DISPOSITION**

The judgment is affirmed.  Cardenas is awarded her costs on appeal.

_____
KANE, J.

I CONCUR:


_____
DETJEN, J.

21.

**GOMES, J., Dissenting.**

While I agree with the majority's conclusion that former section 1102.5 of the Labor Code[1] provides for an independent cause of action in tort, the facts of this case do not present a viable claim under that statute. The relevant statutory language shows that the Legislature intended to exclude from the scope of former section 1102.5 private matters that are of no practical concern to anyone besides the individual who is claiming to be the victim of a criminal act. The law was designed to protect whistleblowers, and respondent does not fall within the category of plaintiffs who may bring suit under its provisions. Since there was no public interest at stake in relation to Ms. Cardenas's report of a possible theft of her wedding ring, her attempt to pursue a claim under *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 (*Tameny*) also fails as a matter of law. I would therefore reverse the judgment and order entry of a new judgment in favor of appellant.

**Scope of Former § 1102.5, subd. (b)**

"As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose." (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) "We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning *and viewing them in their statutory context*, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent." (*People v. Watson* (2007) 42 Cal.4th 822, 828, italics added.) The plain meaning controls if there is no ambiguity in the statutory language (*People v. King* (2006) 38 Cal.4th 617, 622), referring, of course, to the plain meaning as apparent within the context of the statutory scheme (*People v. Johnson* (2015) 61 Cal.4th 674, 682). Extrinsic aids, such as legislative history, should be considered and relied upon only if the statutory language is reasonably subject to

---

[1] All further statutory references are to the Labor Code.

multiple interpretations.  (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 888.)

Here we are concerned with section 1102.5 as it existed at the time of the underlying events, prior to its amendment in 2014.  Subdivision (b) of that section pertains to the reporting of information regarding "a violation of [a] state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."  (Stats. 2003, ch. 484, § 2.)  The pre-2014 version of the statute also contains the following uncodified preamble:

> "The Legislature finds and declares that *unlawful activities of private corporations* may result in damages not only to the corporation and its shareholders and investors, but also to employees of the corporation and the public at large.  The damages caused by unlawful activities may be prevented by the early detection of *corporate wrongdoing*.  The employees of a corporation are in a unique position to report corporate wrongdoing to an appropriate government or law enforcement agency. [¶] The Legislature finds and declares that it is the public policy of the State of California to encourage employees to notify an appropriate government or law enforcement agency when they have reason to believe their employer is violating *laws enacted for the protection of corporate shareholders, investors, employees, and the general public*. [¶] It is the intent of the Legislature to protect employees who refuse to act at the direction of their employer or refuse to participate in *activities of an employer* that would result in a violation of law."  (Stats. 2003, ch. 484, § 1, italics added.)

"An uncodified section is part of the statutory law."  (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 925 (*Carter*).)  As such, the uncodified preamble to former section 1102.5 "properly may be utilized as an aid in construing [the] statute." (*Carter,* at p. 925.)  In other words, the preamble is not an extrinsic aid, and our reliance upon it to ascertain legislative intent does not violate the plain meaning doctrine. Furthermore, we are bound by "the rule that courts should give statutory words their plain or literal meaning *unless that meaning is inconsistent with the legislative intent apparent in the statute*."  (*People v. Allen* (1999) 21 Cal.4th 846, 859, italics added.)  The majority inexplicably dismisses the statement of legislative intent in the preamble, and suggests

2.

that it is permissible to view the language of section 1102.5, subdivision (b) in a vacuum, "[e]ven if the Legislature intended to limit the statute's application to reports of wrongdoing concerning the employer's enterprise, operations, or practices…." (Maj. opn. at p. 14.)

In *McVeigh v. Recology San Francisco* (2013) 213 Cal.App.4th 443 (*McVeigh*), the First District Court of Appeal considered the language of the uncodified preamble in deciding the issue of whether former section 1102.5, subdivision (b) extended protection to the reporting of suspected illegal activity by a "fellow employee." (*Id*. at pp. 469-470.) The appellate court answered this question in the affirmative. (*Id*. at p. 471.) I cite to *McVeigh* to highlight the relevance of the preamble to our statutory construction analysis, but further note that the First District's application of the statute to reports about a coworker's criminal behavior occurred within the context of genuine whistleblowing activity.

The *McVeigh* plaintiff had reported suspicions of fraud in connection with California redemption value payments made by his employer to third parties for recycled materials. He believed the fraud was being perpetrated by multiple coworkers and either covered up or ignored by corporate management. (*McVeigh*, *supra*, 213 Cal.App.4th at pp. 447-450.) The plaintiff was concerned that the scheme was costing his employer upwards of $100,000 on an annual basis (*id*. at p. 450), thus establishing that the subject matter of his report fell within the scope of unlawful activity described in the Legislature's preamble to former section 1102.5, i.e., crimes that may damage the corporation, its shareholders, and/or investors. (Stats. 2003, ch. 484, § 1, ¶ 1; see *McVeigh*, *supra*, 213 Cal.App.4th at p. 472, fn. 9 [noting that a report of fraud perpetrated against the corporation by its own employees would support a retaliation claim under the Labor Code, even if such activity did not implicate the general public's interest for purposes of a *Tameny* claim].) Other appellate decisions that have applied current and former versions of section 1102.5, subdivision (b) to an employee's reporting of illegal

activity by coworkers or superiors have involved matters of significant consequence to the employer and/or the general public. (E.g., *Hager v. County of Los Angeles* (2014) 228 Cal.App.4th 1538, 1542-1546, 1552 [report by sheriff's deputy of suspicions that a coworker was involved in illegal narcotics trafficking and played a role in the murder of a fellow deputy who had disappeared under mysterious circumstances]; *Gardenhire v. Housing Authority* (2000) 85 Cal.App.4th 236, 237-240 [report by employee of a city housing authority of schemes devised by an outside contractor and facilitated by her workplace colleagues which resulted in unwarranted disbursements of public funds].) Those cases are clearly distinguishable from the present lawsuit.

Our contextual analysis should begin with recognition of an employer's right to discharge an at-will employee for any reason not otherwise prohibited by law, as provided by section 2922. In *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66 (*Green*), the California Supreme Court explained that "an employer's right to discharge an at-will employee is subject to limits that fundamental public policy imposes." (*Id.* at p. 71.) Former section 1102.5, subdivision (b) represents an exception to the general rule of at-will employment and should be interpreted in accordance with the legislative intent of furthering the important public policy of protecting "whistleblowers" from unfair retaliation. (*Green,* at pp. 76-77; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 287 ["Labor Code section 1102.5 is a whistleblower statute, the purpose of which is to 'encourag[e] workplace whistle-blowers to report unlawful acts without fearing retaliation.'"].)

"A whistleblower is either (a) an employee who is asked by his superior to commit a violation of statutory policy and not only refuses but also discloses the request to his employer or a governmental agency [citations,] or (b) an employee who has been discharged for reporting to his employer or a government agency that other employees or his employer are violating the law [citations]." (*Gonzalez v. Superior Court* (1995) 33 Cal.App.4th 1539, 1545, fn. 4.) Neither lawyers nor laypersons understand the term

4.

"whistleblower" to refer to a person who reports any violation of law regardless of how, under what circumstances, or by whom committed, and without consideration of whether the illegal activity impacts anyone besides the person reporting it. If that were the case, all reports of unlawful activity made to police would be considered whistleblowing, which is an absurd proposition. Former section 1102.5 does not actually use the term "whistleblower," but its uncodified preamble provides clear guidance as to the type of reporting that is and is not protected by the statute. I do not believe the statute can reasonably be interpreted as extending protection to matters of a purely private and personal interest that have no meaningful relationship to the employer's business activities and are uniquely important to the employee who has reported a suspected violation of law.

I agree that the statute should be broadly construed to further the public policy considerations upon which it is based, and do not suggest the cognizability of respondent's claim turns on her motives for contacting police about the missing ring. "[I]t it is not the *motive* of the asserted whistleblower, but the nature of the communication that determines whether it is covered." (*Mize-Kurzman v. Marin Community College Dist*. (2012) 202 Cal.App.4th 832, 852.) However, it seems rather obvious to me that Ms. Cardenas did not "blow the whistle" on any type of wrongdoing contemplated by the Legislature in its enactment of section 1102.5. She merely filed a police report in regards to the loss and possible theft of personal property which happened to occur while she was at work. By countenancing application of the whistleblower statute to reports of private matters which coincidentally involve an employee's coworker, the majority has created a new exception to the venerable rule of at-will employment that was never intended by our Legislature.

**Respondent's Reporting Activities Do Not Support a *Tameny* Claim**

In *Tameny*, *supra*, our Supreme Court held that "when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee

5.

may maintain a tort action and recover damages traditionally available in such actions." (*Tameny*, *supra*, 27 Cal.3d at p. 170.) In *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1095, the high court clarified that a cause of action under *Tameny* must be "carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions." The policy upon which the claim is based "must involve a matter that affects society at large rather than a purely personal or proprietary interest of the plaintiff or employer…." (*Id*. at p. 1090.) Therefore, to assert a viable *Tameny* claim, a plaintiff must establish that he or she was terminated in retaliation for reporting "reasonably suspected illegal conduct . . . that harms the public as well as the employer." (*Collier v. Superior Court* (1991) 228 Cal.App.3d 1117, 1119-1120.)

Respondent reported suspicions of illegal conduct prior to being terminated from her position of employment, but the alleged conduct harmed neither her employer nor the general public. As discussed, the loss of her ring was a purely private matter that was of no interest to the public at large and implicated no fundamental principles of public policy. The *Tameny* claim thus fails as a matter of law.

In summary, respondent's civil action was premised upon two erroneous theories of recovery. She was allowed to pursue a claim under a whistleblower statute, former section 1102.5, despite the fact that she never engaged in whistleblowing activity. Her report to police concerning possible wrongdoing by a coworker cannot reasonably be construed as the type of disclosure the Legislature intended to protect through its enactment of that law. Respondent's *Tameny* claim was fatally defective for essentially the same reason; the loss and/or suspected theft of her wedding ring was a matter of personal interest to her, but of no material concern or importance to the general public. I would therefore reverse the judgment.

_____
GOMES, Acting P.J.

6.