Filed 3/2/23  P. v. Bullette CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

 Plaintiff and Respondent,

v.

SONYA ROCHELLE BULLETTE,

 Defendant and Appellant.

E077167

(Super.Ct.No. RIF112496)

OPINION

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Reversed and remanded with directions.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie Garland and Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

In 2006, a jury found defendant Sonya Rochelle Bullette guilty of premeditated attempted murder, discharging a firearm from a motor vehicle, and robbery, and found true certain sentencing enhancements including that she intentionally discharged a firearm and caused great bodily injury or death. The trial court sentenced defendant to state prison for 32 years to life, and this court affirmed the judgment on appeal. In 2020, the Department of Corrections and Rehabilitation (department) recommended the trial court recall defendant's sentence and resentence her pursuant to Penal Code former section 1170, subdivision (d) (former § 1170(d); Stats. 2018, ch. 1001, § 2). Based on defendant's conduct in prison and what the court perceived as her failure to take responsibility for her actions in the underlying offenses, the trial court denied the recommendation.

On appeal, defendant argued (1) the trial erred by not recalling her sentence and resentencing her without first obtaining a supplemental presentence report and recommendation from the probation department and (2) her attorney rendered ineffective assistance of counsel by not requesting a supplemental probation report and not addressing all resentencing options to the trial court. After the parties filed their principal briefs, the Legislature enacted a series of bills that amended former section 1170(d). As discussed, *post*, those amendments clarified the procedures the trial court must follow when it rules on a recommendation from the department. Because those amendments merely clarified the existing law, we agree with defendant that we must reverse and remand for the trial court to reconsider the department's recommendation pursuant to the current law.

I.

FACTS AND PROCEDURAL BACKGROUND

We take the pertinent facts of the underlying offenses from this court's decision in defendant's direct appeal (*People v. Bullette* (Nov. 21, 2007, E040753) [nonpub. opn.] (*Bullette I*)), of which we take judicial notice. (Evid. Code, §§ 452, subd. (d), 459; Cal. Rules of Court, rule 8.1115(b)(1).)

On September 20, 2003, defendant and her significant other, Michael Batchelor, spent the day in a motel room with Jeremy Price and Amy Rasmussen smoking methamphetamine. Defendant and Batchelor needed money to pay for another night at the motel so Price and Rasmussen arranged for them to sell methamphetamine to Jesse Lewis for $50. With defendant driving, Batchelor in the front passenger seat, and Price and Rasmussen in the backseat, the quartet went to Lewis's apartment to complete the transaction. Batchelor had a gun. (*Bullette I*, *supra*, E040753.)

Rasmussen stayed in the car with defendant and Batchelor while Price went to Lewis's apartment. Lewis showed up at defendant's car while Price was off looking for him. At defendant's direction, Lewis got in the backseat of the car, and defendant drove off, leaving Price behind. Defendant and Batchelor got angry when Lewis said he did not want to pay $50 for the methamphetamine. Defendant pulled out a gun, and pointed it at Lewis's face, while Batchelor went through Lewis's pockets. Lewis gave Batchelor his wallet after defendant said something, the exact words Lewis could not recall, that made it clear that he was going to get shot if he did not have any money. Defendant drove off again after Batchelor took the gun and pointed it at Lewis. While driving defendant said,

3

"Let's take him to the alley," and when she got to the alley she said, "Let's do him right here." (*Bullette I*, *supra*, E040753.)

Defendant and Batchelor then changed places and Batchelor drove while defendant pointed the gun at Lewis. When defendant and Batchelor turned to look at another car that had pulled into the alley, Lewis jumped from defendant's moving car. Defendant shot at Lewis and the bullet hit him in the lower back. The gun jammed when defendant tried to fire a second time. Batchelor drove away fast. According to Amy Rasmussen, Batchelor threw Lewis's wallet out the window and threw the gun into a culvert or storm drain. Rasmussen was crying and hysterical. Defendant threatened to hurt Rasmussen and her family if she told anyone what had happened. Batchelor drove to Rasmussen's house. Price was at the house and asked defendant and Batchelor what had happened. Defendant said she had "killed that F'ing N," and had "shot the mother fucker right between the ears." (*Bullette I*, *supra*, E040753.)

The next day, a police officer found the gun after Amy Rasmussen showed him where Batchelor had discarded it. The gun had a live round in the magazine and a bullet stuck in the barrel. The police found an expended shell casing in the ashtray of defendant's car. Later the police located defendant and Batchelor in a motel room registered to Jeremy Price. In a search of that room, the police found items consistent with the sale of drugs including a day planner that contained a list of drug weights, conversions from ounces to grams, and the street terms for those weights. In defendant's purse, the police found small ziplock baggies. Defendant initially denied any knowledge of the shooting when the police

4

questioned her.  Eventually, defendant acknowledged that the shooting had occurred, but she stated that Amy Rasmussen was the shooter.  (*Bullette I*, *supra*, E040753.)

In a second amended information, the People charged defendant with one count of deliberate and premeditated attempted murder (Pen. Code,[1] §§ 664, 187, subd. (a), count 1), one count of willfully and maliciously discharging a firearm from a motor vehicle (§ 12034, subd. (c), count 2), and one count of robbery (§ 211, count 3).  Inter alia, the People alleged defendant personally and intentionally discharged a firearm and caused great bodily injury or death.  (§§ 12022.53, subd. (d), 1192.7, subd. (c)(8).)  In 2006, a jury convicted defendant on all three counts and found true all special allegations.

The trial court deemed count 1 to be the principal count and sentenced defendant to an indeterminate state prison term of seven years to life for the attempted murder.  For the true finding that defendant personally and intentionally discharged a firearm and caused great bodily harm during the commission of count 1, the trial court sentenced her to a consecutive term of 25 years to life.  The court sentenced defendant on the remaining counts and allegations but either imposed concurrent sentences or stayed the execution of those sentences pursuant to section 654.

On direct appeal, this court rejected defendant's challenge to the sufficiency of the evidence to support her convictions for premeditated attempted murder and for discharging a firearm from a motor vehicle and affirmed the judgment.  (*Bullette I*, *supra*, E040753.)  The California Supreme Court denied defendant's petition for review in

---

[1] All undesignated statutory references are to the Penal Code.

5

*People v. Bullette* (Feb. 27, 2008, S159439), and the United States Supreme Court denied her petition for writ of certiorari in *Bullette v. California* (2008) 555 U.S. 838. This court summarily denied defendant's petitions for writ of habeas corpus. (*In re Bullette on Habeas Corpus* (July 21, 2011, E054030); *In re Bullette on Habeas Corpus* (Aug 24, 2011, E054275).)

On December 14, 2020, the superior court received a letter from the department, which also included a cumulative case summary and evaluation report, in which the department recommended the court recall defendant's sentence pursuant to former section 1170(d)(1) and resentence her "based upon her exceptional conduct while incarcerated." The department reported that defendant had received six rule violation reports since her commitment to prison in June 2008, but that she had been "disciplinary free since June 14, 2012." According to the department, defendant "received numerous certificates and participation chronos,[2] reflecting dedication to her rehabilitation efforts"; she had a "good attitude"; and prison staff reported defendant was "friendly and respectful" and a good "'programmer.'"

The People, represented by the district attorney, filed an opposition to the recommendation. According to the prosecutor, "nothing in that request demonstrates that defendant has performed any better in prison than what was expected at the time of original sentencing." Although defendant had "done some solid self-help activities," the prosecutor argued her "institutional adjustment does raise some concerns." For instance,

---

[2] "A 'chrono' is an institutional documentation of information about inmates and inmate behavior." (*In re Shelton* (2020) 53 Cal.App.5th 650, 658, fn. 6.)

although defendant had not been disciplined since 2012, as recently as May 2019, she had received an administrative rule violation report "for behavior which could lead to violence." Although that incident was later reduced to a "counseling chrono," defendant received a total of 18 counseling chronos for conduct such as theft, delaying a peace officer, and fighting. Because defendant was the actual shooter in the underlying offenses and had recently acted violently "in a controlled environment," the prosecutor asked the trial court to not resentence her.

The prosecutor argued the trial court had already exercised its sentencing discretion "under the controlling rules." Moreover, because the court was not required to consider postsentence conduct in custody when considering whether to resentence a defendant, "absent exceptionally positive conduct in prison unanticipated at the time of the original sentence, a prisoner should not qualify for resentencing." Finally, the prosecutor argued that, if the court were inclined to recall defendant's sentence and conduct a resentencing hearing, consideration of the aggravating and mitigating factors under rules 4.421 and 4.423 of the California Rules of Court should result in the same sentence.

In a brief in support of resentencing, defendant urged the trial court to give the department's recommendation "great weight, given that [the department], as the defendant's custodian during the period of incarceration, are in the best position to judge whether Defendant's rehabilitative efforts warrant a reduced sentence." Defendant noted that, during her 15 years in prison, she had only received six rule violation reports and had been discipline free since June 2012. She submitted extensive documentation of her

self-help activities, educational programs, and work assignments. Defendant argued factors such as her age, time in custody, and "positive attitude and willingness to take responsibility for her actions" demonstrated there was "reduced risk" she might engage in violence in the future. Moreover, defendant argued her circumstances had changed since her original sentence and her "continued incarceration is no longer in the interest of justice."

Defendant also submitted a copy of her application for commutation of her sentence. In her statement describing the circumstances of the underlying offenses, defendant suggested the shooting was accidental and not deliberate and premeditated as the jury found. Instead, defendant wrote that Lewis "grabbed the gun in my hand at the same time he opened the back door," and, as they were "struggling with the gun," she "pulled the trigger" and "shot[] Lewis at the same time he was exiting the car." In her statement explaining why she was seeking commutation of her sentence, defendant wrote, "I take full responsibility for my actions." Finally, in a statement of why she believed she should be granted a commutation, defendant wrote she could not "make excuses" for her actions or "minimize it."

At the hearing conducted on May 5, 2021, defendant's attorney submitted on the motion previously filed with the court and did not present any additional evidence or arguments. The trial court indicated it had read and considered the moving papers and supporting documentation, but that it was not inclined to grant the department's recommendation and recall defendant's sentence. The court stated it had previously

8

recalled the sentence of two convicted murderers and resentenced them, but defendant "does not impress me as much as those folks."

The court noted defendant had received six rule violations, "although there haven't been any since 2012." More importantly, the court said defendant's description of the crime in her commutation application was inconsistent with the facts laid out in the department's cumulative summary and evaluation report, "specifically statements attributed [to defendant] during the commission of the attempted murder—the most important one was 'Let's do him right here.' The fact pattern described she and the driver moving the defendant—or the victim to an alley. At some point, the victim jumped from the car to run and [defendant] fired a gun, striking the victim, and attempted to fire a gun a second time, but the gun jammed." According to the trial court, defendant "present[ed] an entirely different set of events; essentially suggesting that it was an accidental discharge because . . . she got into a struggle with the gun and it just happened to go off as the victim exited the vehicle and striking him." Therefore, because the court found defendant was not "accepting of responsibility," it declined to exercise its discretion to recall the sentence under former section 1170(d) and denied the department's recommendation.

Defendant timely appealed.

## II.

## DISCUSSION

A trial court loses jurisdiction over a defendant and loses jurisdiction to resentence her once the court has relinquished custody over her and execution of her sentence has commenced. (*People v. Karaman* (1992) 4 Cal.4th 335, 344.) Former section 1170(d)(1)

9

was an exception to that rule. (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 455.) Within 120 days of defendant's commitment, the trial court had the authority, under former section 1170(d)(1), to recall the sentence and resentence defendant "on its own motion." (Stats. 2018, ch. 1001, § 2.) That statute "provide[d] a specific scheme for the trial court to exercise jurisdiction for a limited time after it normally would have lost jurisdiction." (*Portillo v. Superior Court* (1992) 10 Cal.App.4th 1829, 1835.)

Although defendant herself had no standing to formally request that the trial court recall her sentence under former section 1170(d), she could informally invite the court to exercise its own motion jurisdiction within 120 days of his commitment. (*People v. Loper* (2015) 60 Cal.4th 1155, 1166-1167.) In addition, as it did here, "at any time" the department could recommend the trial court recall defendant's sentence and resentence her. (Former § 1170(d)(1).) Denial of such a recommendation is reviewed for abuse of discretion. (*People v. Frazier* (2020) 55 Cal.App.5th 858, 863-864.)

After the trial court denied the department's recommendation in this case and while the order was on appeal, the Legislature enacted a series of bills that, among other things, amended former section 1170 (Stats. 2020, ch. 29, § 15, eff. Aug. 6, 2020, operative Jan. 1, 2022), and enacted former section 1170.03 (Stats. 2021, ch. 719, § 3.1, eff. Jan. 1, 2022, amended and renumbered as section 1172.1 (Stats. 2022, ch. 58, § 9, eff. June 30, 2022)). Former section 1170.03 (Stats. 2021, ch. 719, § 3.1) provided that the trial court may not deny a resentencing recommendation from the department without first (1) providing a defendant with notice of the recommendation (*id*., at subd. (b)(1)), (2) appointing counsel for a defendant (*ibid*.), (3) setting a status conference within

10

30 days after the date the court received the request (*ibid*.), and (4) conducting a hearing where the parties are allowed to address the basis of the court's intended denial or rejection (*id*., at subd. (a)(8)). In addition, former section 1170.03 established a rebuttable presumption in favor of recalling and resentencing a defendant that may be overcome only if the trial court finds that he or she poses an unreasonable risk of danger to public safety as defined in section 1170.18. (Former § 1170.03, subd. (b)(2).) It also required the court to state on the record its reasons for granting or denying the department's recommendation. (*Id*., at subd. (a)(6).)

In uncodified statements of legislative purpose, the Legislature expressed its intent that trial courts "recognize the scrutiny that has already been brought to these [resentencing] referrals" and "apply ameliorative laws passed by this body that reduce sentences or provide for judicial discretion, regardless of the date of the offense or conviction." (Stats. 2021, ch. 719, § 1, subds. (h)-(i).) And, more recently, the Legislature renumbered former section 1170.03 as 1172.1 without substantive change. (Stats. 2022, ch. 58, § 9, eff. June 30, 2022; see *People v. Braggs* (2022) 85 Cal.App.5th 809, 818; *People v. Salgado* (2022) 82 Cal.App.5th 376, 378, fn. 2.)

In her supplemental brief, defendant argues the amendments to former section 1170(d), which are now found in section 1172.1, apply to her case, and this court should reverse and remand for the trial court to reconsider the department's recommendation under the new statute. The People argue there is no need to reverse and remand because the trial court's stated reasons for denying the department's

11

recommendation essentially satisfied the requirements of section 1172.1.  We agree with defendant.

When deciding whether a statutory amendment applies to a case that was pending on appeal, the reviewing court "must explore whether the amendment changed or merely clarified existing law.  A statute that merely clarifies, rather than changes, existing law is properly applied to transactions predating its enactment."  (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 922 (*Carter*), citing *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 (*Western Security Bank*).)  "Such a legislative act has no retrospective effect because the true meaning of the statute remains the same." (*Western Security Bank*, at p. 243.)

Although the courts are not bound to accept the Legislature's statement that an amendment makes only clarifying changes, certain circumstances support such a conclusion.  (*Western Security Bank*, *supra*, 15 Cal.4th at p. 244.)  "'One such circumstance is when the Legislature promptly reacts to the emergence of a novel question of statutory interpretation[.]'  [Citation.]  '"'An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute. . . .  [¶]  If the amendment was enacted soon after controversies arose as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act—a formal change—rebutting the presumption of substantial change.'"'"  (*Carter*, *supra*, 38 Cal.4th at p. 923, quoting *Western Security Bank*, at p. 243.)

The Courts of Appeal have held that the 2021 amendments to former section 1170(d) merely clarified the procedures the trial court is required to follow when it receives a recommendation from the department; clarified the statute's application to ameliorative changes in the law regardless of the date of conviction; and clarified certain aspects of the statute the courts had incorrectly interpreted. (*People v. E.M.* (2022) 85 Cal.App.5th 1075, 1089-1090; *People v. McMurray* (2022) 76 Cal.App.5th 1035, 1040-1041.) And, for cases that were pending on appeal when those amendments went into effect, the courts have held it is appropriate to reverse and remand for the trial court to reconsider the department's recommendation under the new and clarified statute. (*E.M.*, at p. 1090; *McMurray*, at pp. 1039, 1041; *People v. Pierce* (Feb. 28, 2023, B322890) ___ Cal.App.5th ___ [2023 Cal.App. Lexis 138, *7]; see *Carter*, *supra*, 38 Cal.4th at pp. 930-931.) We find those decisions to be persuasive and adopt their reasoning. Therefore, we reverse the order denying the department's recommendation and remand for the trial court to reconsider the recommendation under section 1172.1.

In her original briefs on appeal, defendant argued that the trial court erred by not directing the probation department to prepare a supplemental presentence report and recommendation before it ruled on the department's recommendation. Defendant was not eligible for probation and, therefore, she was not entitled to a supplemental probation report and her failure to specifically request one or object to the absence of one constituted a forfeiture of the issue on appeal. (*People v. Franco* (2014) 232 Cal.App.4th 831, 834.) "[A] timely objection to the absence of a supplemental report would have permitted the court to explain why none was necessary." (*People v. Johnson* (1999) 70

13

Cal.App.4th 1429, 1433.)  In any event, because we reverse and remand for the trial court to reconsider its ruling under section 1172.1, we need not decide whether the trial court erred by not requesting a supplemental probation report or whether defendant's attorney rendered ineffective assistance of counsel by not objecting to the absence of one. However, we provide the following as guidance on remand.

Other than for the purpose of determining certain "sentencing issues" such as the proper amount of the restitution fine, the trial court has discretion whether to refer a case to the probation department for preparation of a presentence report and recommendation for a defendant who is not eligible for probation.  (Cal. Rules of Court, rule 4.411(a)(1); see Pen. Code, § 1203, subd. (g); *People v. Franco*, *supra*, 232 Cal.App.4th at p. 834 & fn. 21; *People v. Johnson*, *supra*, 70 Cal.App.4th at pp. 1431-1432.)  The same goes for resentencing of a defendant who is not eligible for probation, but the courts have held the trial court's discretion in that situation is somewhat narrower, obtaining a supplemental probation report is the preferred practice, and the trial court must have a sound reason for not ordering one.  (*People v. Bullock* (1994) 26 Cal.App.4th 985, 989-990; *People v. Tatlis* (1991) 230 Cal.App.3d 1266, 1273.)  "There may be compelling reasons for ordering a probation report even when the defendant is ineligible for probation.  The defendant's postconviction behavior and other possible developments remain relevant to the trial court's consideration upon resentencing.  Still, in many cases obtaining a new report will be a meaningless exercise.  The trial court is in the best position to evaluate the need for an updated report, with the input of counsel."  (*People v. Bullock*, at p. 990.)

On remand, the trial court should consider whether a supplemental probation report would be useful and, if it concludes such a report is unnecessary, the court should state on the record its reasons for not obtaining one.

III.

DISPOSITION

The order denying the department's recommendation that the trial court recall and resentence defendant is reversed and remanded with directions for the trial court to reconsider the recommendation under section 1172.1.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER _____

J.

We concur:

RAMIREZ _____

P. J.

RAPHAEL _____

J.

15